UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS MALDONADO,

       Plaintiff,

v.                      Case No. 8:13-cv-292-T-33AEP

MATTRESS FIRM, INC., CALLAHAN'S
EXPRESS DELIVERY, INC., and
PATRICK W. CALLAHAN,

       Defendants.
_____/

## ORDER

    This matter comes before the Court in consideration of Defendants Callahan's Express Delivery, Inc. and Patrick W. Callahan's Motion to Dismiss and Compel Arbitration (Doc. # 23), filed on March 20, 2013. Plaintiff Luis Maldonado filed a response in opposition to the motion on April 15, 2013. (Doc. # 33). For the reasons that follow, the motion is granted.

## I.  Background

    On January 31, 2013, Maldonado initiated this action against Defendants Mattress Firm, Inc., Callahan's Express Delivery, Inc., and Patrick W. Callahan to recover overtime compensation in accordance with the Fair Labor Standards Act. Specifically, Maldonado claims that, "from at least

June 13, 2011 and continuing through June 1, 2012," during which time Defendants employed Maldonado as a local delivery driver, Defendants failed to compensate Maldonado at a rate of one and one-half times Maldonado's regular rate for all hours worked in excess of 40 hours in a single work week. (Doc. # 1 at ¶ 33, 35).

On March 20, 2013, Defendants Callahan's Express Delivery and Patrick Callahan filed the instant Motion to Dismiss and Compel Arbitration. (Doc. # 23). Within the motion, these Defendants claim that Maldonado executed an "Independent Contractor's Agreement"[1] in November of 2010, and that this agreement "preclude[s] [Maldonado] from bringing this action as he agreed to first mediate, and if unsuccessful, to thereafter arbitrate all disputes between the parties whether arising out of the [agreement] or otherwise." Id. at 2. Specifically, the agreement provides:

> 15. **Mediation and Arbitration.** Any disputes between the parties hereto, whether arising under this agreement or otherwise, . . . shall be:

---

[1] The agreement containing the relevant arbitration provision is titled "Independent Contractor's Agreement." (Doc. # 23 at 7). However, the Court expresses no opinion as to whether Maldonado is an employee or an independent contractor for purposes of the FLSA.

> **15.1** Referred to a court certified mediator . . . .
>
> **15.2** In the event that said dispute is not resolved in mediation, the parties shall submit the dispute to a neutral arbitrator . . . . The parties shall share equally in the cost of said arbitration . . . . Any and all types of relief that would otherwise be available in Court shall be available to both parties in the arbitration.

(Doc. # 23 at 10).

Maldonado raises two arguments in opposition to the Motion to Dismiss and Compel Arbitration. First, Maldonado claims that "because the costs of arbitration are so excessive in comparison with Maldonado's potential recovery, same would completely obfuscate the remedial nature of the FLSA." (Doc. # 33 at 2). Secondly, Maldonado argues that "the purported arbitration agreement is both procedurally and substantively unconscionable." Id. The Court will address each of these arguments in turn.

## II.  **Discussion**

The Federal Arbitration Act (FAA) "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Dean Witter

Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010) (internal citations omitted). "Like other contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Id. (internal quotation and citation omitted).

"State law generally governs whether an enforceable agreement to arbitrate exists." Delano v. Mastec, Inc., No. 8:10-cv-320-T-27MAP, 2010 WL 4809081, at *2 (M.D. Fla. Nov. 18, 2010). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Id. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25-26 (1983).

"Before a court may require parties to arbitrate, the movant must establish that there is a valid arbitration agreement and that the disputed claims are subject to

4

arbitration." <u>Perera v. H & R Block E. Enters., Inc.</u>, No.
12-22367-CIV, 2012 WL 5471942, at *2 (S.D. Fla. Nov. 9,
2012).[2] "In making a determination as to the first factor,
the written arbitration agreement must be 'enforceable
under ordinary state-law contract principles.'" <u>Id.</u>
(quoting <u>Lambert v. Austin Ind.</u>, 544 F.3d 1192, 1195 (11th
Cir. 2008)). "When these factors are satisfied, the court
is required to either stay or dismiss a lawsuit and to
compel arbitration." <u>Id.</u> (internal quotation omitted).

### A.   Considering the Agreement

As a preliminary matter, because the Independent
Contractor's Agreement was not referenced in Maldonado's
Complaint, the Court must determine whether this document
may be considered in evaluating the motion to dismiss.
Defendants claim to have filed the motion pursuant to both
Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).
The Court determines, as did the court in <u>Perera</u>, 2012 WL
5471942, at *4, that

> If the motion was brought under Rule 12(b)(1) for
> lack of subject matter jurisdiction, then the
> Court may consider factual matters outside the
> pleadings, such as the . . . agreement. <u>See</u>

---

[2]   In the instant case, neither party disputes that
Maldonado's FLSA claims constitute a "dispute between the
parties . . . arising under [the] agreement or otherwise."
(Doc. # 23 at 10).

> Carmichael v. Kellogg, Brown & Root Servs., Inc.,
> 572 F.3d 1271, 1279 (11th Cir. 2009) ("[W]here a
> defendant raises a factual attack on subject
> matter jurisdiction, the district court may
> consider extrinsic evidence such as deposition
> testimony and affidavits."). If the motion was
> brought under Rule 12(b)(6) for failure to state
> a claim, then the Court may consider the . . .
> agreement because it is central to Plaintiff's
> claims for unpaid compensation and its
> authenticity is not disputed. Horsley v. Feldt,
> 304 F.3d 1125, 1134 (11th Cir. 2002).

Thus, the Court may appropriately consider the relevant agreement at this juncture.

### B.   **Agreement Enforceability: Unconscionability**

In determining whether the arbitration agreement is enforceable under ordinary state-law principles, the Court must address Maldonado's unconscionability argument. Under Florida law, the requisite elements of a valid contract are (1) an offer, (2) an acceptance, and (3) consideration. See Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cnty., Inc., 639 So. 2d 636, 637 (Fla. 5th DCA 1994). Neither party disputes that all three elements are present in this case. Instead, Maldonado asserts that the arbitration agreement is subject to the contract defense of unconscionability.

Florida courts have described the concept of unconscionability as "'chameleon-like,' and as 'so vague .

. . that neither the courts, practicing attorneys, nor contract draftsmen can determine with any degree of certainty' when it will apply in any given situation." Gainesville Health Ctr., Inc. v. Weston, 857 So. 2d 278, 283 (Fla. 1st DCA 2003) (quoting Steinhardt v. Rudolph, 422 So. 2d 884, 890 (Fla. 3d DCA 1982); Fotomat Corp. of Fla. v. Chanda, 464 So. 2d 626, 628 n.1 (Fla. 5th DCA 1985)).

With regard to the application of the contract defense of unconscionability, one Florida court has explained that

> [the concept of unconscionability] does not mean . . . that a court will relieve a party of his obligations under a contract because he has made a bad bargain containing contractual terms which are unreasonable or impose an onerous hardship on him. Indeed, the entire law of contracts, as well as the commercial value of contractual arrangements, would be substantially undermined if parties could back out of their contractual undertakings on that basis. People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

Steinhardt, 422 So. 2d at 890 (internal quotations and citations omitted). Furthermore, in Florida, a contract is unconscionable only if both procedural and substantive unconscionability exist, "although not in equal amounts." VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc., 912 So. 2d 34, 39 (Fla. 4th DCA 2005). "Instead, a balancing approach is employed allowing one prong to outweigh another provided that there is at least a modicum of the weaker prong." Id.

    "To determine whether a contract is procedurally unconscionable, a court must look to the circumstances surrounding the transaction to determine whether the complaining party had a meaningful choice at the time the contract was entered." Gainesville Health, 857 So. 2d at 284 (quotations omitted). "To determine whether a contract is substantively unconscionable, a court must look to the terms of the contract, itself, and determine whether they are so outrageously unfair as to shock the judicial conscience." Id. at 284-85 (quotations omitted). "A substantively unconscionable contract is one that no man in his senses and not under delusion would make on one hand, and [that] no honest and fair man would accept on the other." Pilitz v. Bluegreen Corp., No. 6:11-cv-388-Orl-

8

19KRS, 2011 WL 3359641, at *3 (M.D. Fla. Aug. 4, 2011) (quoting <u>Bland v. Health Care & Retirement Corp. of Am.</u>, 927 So. 2d 252, 256 (Fla. 2d DCA 2006)).

Maldonado offers several reasons as to why the arbitration agreement should be considered procedurally unconscionable under Florida law, including (1) the arbitration clause's location within the agreement, "buried on page 4 (of 6) and among over 30 paragraphs and sub-paragraphs;" (2) the lack of any supplemental explanation regarding "the document as a whole or the arbitration clause [in particular]" at the time Maldonado was "forced to sign;" (3) Maldonado's lack of an opportunity to review the agreement or permission to retain a copy for later review; and (4) the absence of any negotiation between the parties regarding the terms of the agreement. (Doc. # 33 at 7-8).

The Court is unconvinced that the circumstances surrounding Maldonado's signing of this agreement warrant a finding of procedural unconscionability. The arbitration clause is not "hidden in a maze of fine print," <u>Powertel, Inc. v. Bexley</u>, 743 So. 2d 570, 574 (Fla. 1st DCA 1999), but rather is included within a subsection under the heading: "Mediation and Arbitration." (Doc. # 23 at 10).

This provision appears in the same font and size as all of the other provisions. Additionally, although the Court acknowledges that "the fact that a contract is one of adhesion is a strong indicator that the contract is procedurally unconscionable because it suggests an absence of meaningful choice," VoiceStream, 912 So. 2d at 40, Maldonado's contention that he was presented the contract on a take-it-or-leave-it basis "does not require a finding of procedural unconscionability." Id.; see also Orkin Exterminating Co. v. Petsch, 872 So. 2d 259, 265 (Fla. 2d DCA 2004). Furthermore, Maldonado's signature appears below a bold-printed paragraph on the last page of the agreement which provides:

> I have read and understand the terms of this agreement, and understand further to have the right to consult with an attorney prior to signing below. My signature below is evidence of my agreement to all the terms of the agreement in their entirety.

(Doc. # 23 at 12).

However, the Court need not determine to what extent, if any, these circumstances might render the agreement procedurally unconscionable, because the Court finds that the arbitration clause is not substantively unconscionable. The arbitration provision specifically affords Maldonado

10

"any and all types of relief that would otherwise be available in Court," and provides that the dispute will be submitted to "a neutral arbitrator certified by the County Court in the County of the principal office of the Corporation." (Doc. # 23 at 10).

Despite these assurances, Maldonado contends that the fee-splitting provision alone renders the arbitration agreement substantively unconscionable. However, the Court finds that this provision fails to render the contract terms "so outrageously unfair as to shock the judicial conscience." Gainesville Health, 857 So. 2d at 285.

Maldonado urges the Court to consider that "at one point the Eleventh Circuit held that [fee-splitting provisions], in the context of unemployment litigation, were per se unconscionable, precisely because they have the effect of denying employees their day in court." (Doc. # 33 at 9). To support this proposition, Maldonado relies upon Perez v. Globe Airport Sec. Servs., Inc., 253 F.3d 1280 (11th Cir. 2001), which the Eleventh Circuit vacated, on its own motion, in 2002. See Perez v. Globe Airport Sec. Servs., Inc., 294 F.3d 1275 (11th Cir. 2002). However, the Eleventh Circuit has since emphasized that any reliance on Perez to argue that a fee-shifting provision

11

renders an arbitration agreement unenforceable would be misplaced, as "[a] vacated decision has no effect whatever." Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1257 n.1 (11th Cir. 2003). In Musnick (which addressed a "loser pays" provision, rather than a fee-splitting provision, in an arbitration agreement), the Eleventh Circuit clarified that "an arbitration agreement is not unenforceable merely because it may involve some 'fee-shifting.'" Id. at 1259.

Maldonado offers no controlling authority to support his argument that "the excessive costs Maldonado would be required to bear if his case were remanded to arbitration" render the agreement substantively unconscionable. (Doc. # 33 at 9). Accordingly, the Court finds that the agreement in this case is not substantively unconscionable, and therefore that the defense of unconscionability is unavailable to Maldonado under Florida law.

C.   **Agreement Enforceability: Claimant Precluded from Vindicating Statutory Rights**

The Supreme Court has recognized that "even claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her]

statutory cause of action in the arbitral forum, the statute serves its functions." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000). Consistent with this rule, "[a]n agreement to arbitrate is unenforceable if the cost of arbitration effectively precludes a claimant from vindicating his federal statutory rights in the arbitral forum." Delano, 2010 WL 4809081, at *5.

Maldonado argues that the Court should find the relevant arbitration clause unenforceable because, "given Maldonado's potential recovery of under $12,000.00, [the costs of arbitration], if imposed on Maldonado, would literally preclude him from pursuing his instant claim." (Doc. # 33 at 5). Maldonado founds this assertion on "costs in a similar independent contractor misclassification case recently litigated in arbitration to final hearing" which "amounted to over $50,000.00." Id. Accordingly, Maldonado argues, "[a]ssuming that the costs of arbitration in this case, with virtually identical issues to be litigated, are approximately the same, Maldonado's portion would easily exceed $20,000.00. Such costs dwarf the costs in a typical FLSA case litigated in court." Id.

However, the Supreme Court has explained that "[t]he 'risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Green Tree, 531 U.S. at 91. "[T]he party seeking to invalidate an arbitration agreement on the ground of prohibitive arbitration costs bears the burden of demonstrating that he is likely to incur such costs." Delano, 2010 WL 4809081, at *5 (citing Musnick, 325 F.3d at 1258). "A showing of the possibility of incurring prohibitive costs is not sufficient." Id. "Moreover, citing arbitration fees incurred in other cases does not necessarily show that a claimant will incur prohibitive costs." Id.

"In Green Tree, the Supreme Court declined to explain how detailed the showing of prohibitive cost [must] be before the burden shifts to the proponent of arbitration to come forward with contrary evidence." Id. at *6. "The Eleventh Circuit has adopted the case-by-case approach adopted by the Fourth Circuit in Bradford v. Rockwell Semiconductor Systems, Inc., 238 F.3d 549 (4th Cir. 2001)." Id. "Pursuant to this approach, the court conducts a case-by-case analysis focusing on (1) the plaintiff's ability to pay the arbitration fees and costs, [and] (2) the

14

difference between the expected cost of arbitration and the expected cost of litigation in court to determine whether the cost differential is so substantial as to deter the bringing of claims." Id. "The party seeking to avoid arbitration must offer evidence of (a) the amount of costs he is likely to incur and (b) his inability to pay those costs." Id. (citing Musnick, 325 F.3d at 1260).

In the instant case, Maldonado presents no evidence of fees charged by the specific arbitrator that would resolve the dispute in this case. As the court explained in Delano, "[w]hile the parties have not yet chosen an arbitrator and providing a non-speculative estimate of expected arbitration costs may be difficult, the same was true in Green Tree, in which the Supreme Court concluded that an article citing average fees for arbitrators and the respondent's citations to fees referenced in other court decisions were insufficient." Id.

As evidence of the costs likely to be incurred in arbitration, Maldonado offers only the statement of a partner at the law firm of Maldonado's counsel. (Doc. # 33-1). That statement provides that, in this particular lawyer's experience, cases "handled in arbitration have much higher costs [than those of pursuing an individual

claim in court], largely due to the requirement that the arbitrator(s) be paid for all the time they spend on the arbitration of the case." Id. at 3. The lawyer's declaration then proceeds to corroborate Maldonado's statement that, in the recent arbitration of a case in which "our client, a limousine driver, asserted he was misclassified as an independent contractor," the "total costs of the arbitration were $52,762.36." Id.

Additionally, Maldonado offers only his own affidavit, to which no supplementary documentation is attached, to demonstrate his inability to pay. Within that affidavit, Maldonado asserts that paying "$25,000.00 in costs to pursue my claim . . . will prohibit me from moving forward with my claim for unpaid wages, as I am currently unemployed, and my damages are less than $12,000.00." (Doc. # 33-2). This statement is inconclusive in determining whether Maldonado would be able to pay the costs of arbitration because, as explained above, citing arbitration fees incurred in other cases does not necessarily show that Maldonado will incur such prohibitive costs in this matter. Indeed, Maldonado's response to the Motion to Dismiss or Compel Arbitration repeatedly assumes, without properly demonstrating, that the arbitration costs

16

in this matter will amount to more than double the value of Maldonado's FLSA claim. (Doc. # 33 at 2, 3, 5).

So long as Maldonado effectively may vindicate his statutory cause of action in the arbitral forum, the FLSA serves its function. Maldonado has not presented evidence sufficient to demonstrate that the cost of arbitration in this case would effectively preclude the vindication of his rights under the FLSA. Accordingly, the Court finds Maldonado's perceived arbitration costs too speculative to render his agreement to arbitrate unenforceable.

## III. **Remaining Defendant**

As explained above, Maldonado named three Defendants in this FLSA action: Mattress Firm, Inc., Callahan's Express Delivery, Inc., and Patrick Callahan. (Doc. # 1). Although the parties apparently do not dispute that both Patrick Callahan and Callahan's Express Delivery were parties to the relevant agreement with Maldonado, the parties have not explained how, if at all, Defendant Mattress Firm might be affected by an order dismissing Defendants Patrick Callahan and Callahan's Express Delivery and compelling arbitration. Mattress Firm has filed an answer to Maldonado's Complaint, and the Court is unclear as to the parties' respective positions regarding whether

this action should proceed between Maldonado and Mattress Firm.   Accordingly, on or before April 29, 2013, both Plaintiff Maldonado and Defendant Mattress Firm are directed to advise the Court as to their respective positions regarding whether this action should be stayed pending the outcome of the arbitration proceedings between Plaintiff Maldonado and Defendants Callahan's Express Delivery and Patrick Callahan.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants' Motion to Dismiss and Compel Arbitration (Doc. # 23) is **GRANTED** as to Defendants Callahan's Express Delivery, Inc., and Patrick W. Callahan.

(2)   The Clerk is directed to terminate Defendants Callahan's Express Delivery, Inc., and Patrick W. Callahan.

(3)   On or before April 29, 2013, both Plaintiff Maldonado and Defendant Mattress Firm are directed to advise the Court as to their respective positions regarding whether this action should be stayed pending the outcome of the arbitration proceedings.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of April, 2013.

18

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record