UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS MALDONADO,

      Plaintiff,

v.                        Case No. 8:13-cv-292-T-33AEP

MATTRESS FIRM, INC., CALLAHAN'S
EXPRESS DELIVERY, INC., and
PATRICK W. CALLAHAN,

      Defendants.
_____/

## ORDER

This cause comes before the Court in consideration of Defendant Mattress Firm's Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c), or in the Alternative, Motion to Compel Arbitration (Doc. # 37), filed on April 25, 2013. Plaintiff Luis Maldonado filed a response in opposition to the Motion (Doc. # 43) on May 20, 2013, and an amended response (Doc. # 44) on May 22, 2013. Mattress Firm filed a reply, with leave of court, on May 31, 2013. (Doc. # 49). For the reasons that follow, the motion is granted in part and denied in part.

## I.  Background

On January 31, 2013, Maldonado initiated this action

against Defendants Mattress Firm, Inc., Callahan's Express Delivery, Inc., and Patrick W. Callahan to recover overtime compensation in accordance with the Fair Labor Standards Act. Specifically, Maldonado claims that, "from at least June 13, 2011 and continuing through June 1, 2012," during which time Defendants employed Maldonado as a local delivery driver, Defendants failed to compensate Maldonado at a rate of one and one-half times Maldonado's regular rate for all hours worked in excess of 40 hours in a single work week. (Doc. # 1 at ¶ 33, 35).

On March 20, 2013, Defendants Callahan's Express Delivery and Patrick Callahan (the Callahan Defendants) filed a Motion to Dismiss and Compel Arbitration (Doc. # 23) based on an "Independent Contractor's Agreement" between the Callahan Defendants and Maldonado. The Court granted the motion to compel arbitration on April 24, 2013 (Doc. # 34). In the Order granting the Callahan Defendants' motion, the Court directed "both Plaintiff Maldonado and Defendant Mattress Firm . . . to advise the Court as to their respective positions regarding whether this action should be stayed pending the outcome of the arbitration proceedings." (Id. at 18). Shortly thereafter -- on April 25, 2013 -- Mattress Firm filed the instant Motion. (Doc.

2

# 37).   Although Mattress Firm does not directly acknowledge within the Motion that it is intended to serve as Mattress Firm's response to the Court's April 24, 2013, Order, Mattress Firm has submitted no other filing that might be construed as such a response.   Accordingly, the Court construes the Motion as Mattress Firm's notice of opposition to a potential stay of this case.

On April 29, 2013, Maldonado filed a notice advising the Court of his position "that the pending case against Mattress Firm, Inc. should be stayed pending the outcome of the arbitration proceedings between Plaintiff and [the Callahan Defendants]."   (Doc. # 38 at 1).   The Court has carefully reviewed the Motion for Judgment on the Pleadings or in the Alternative, Motion to Compel Arbitration, the response to the Motion, and the reply, and is otherwise fully advised in the premises.

## II.  **Discussion**

### A.  **Motion for Judgment on the Pleadings**

A motion under Rule 12(c) of the Federal Rules of Civil Procedure is brought "[a]fter the pleadings are closed -- but early enough not to delay trial."   Fed. R. Civ. P. 12(c).   "'Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is

entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts.'" Cunningham v. Dist. Attorney's Office, 592 F.3d 1237, 1255 (11th Cir. 2010) (quoting Andrx Pharm., Inc. v. Elan Corp., 421 F.3d 1227, 1232-33 (11th Cir. 2005)).

A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. See Szabo v. Fed. Ins. Co., No. 8:10-cv-2167-T-33, 2011 WL 3875421 (M.D. Fla. Aug. 31, 2011) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). As with a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). Additionally, a trial court must accept as true all factual allegations in the complaint and construe the facts in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).

Rule 12(d) instructs that when matters outside of the

4

pleadings are presented to the court on a motion for judgment on the pleadings, the motion must be treated as one for summary judgment. <u>See</u> Fed. R. Civ. P. 12(d). However, the motion "should only be treated as one for summary judgment if the record is fully developed and the non-moving party was given adequate notice of the court's decision." <u>Jozwiak v. Stryker Corp.</u>, No. 6:09-cv-1985-Orl-19GJK, 2010 WL 743834, at *4 (M.D. Fla. Feb. 26, 2010) (citations omitted).

"The court has a broad discretion when deciding whether to treat a motion [for judgment on the pleadings] as a motion for summary judgment even though supplementary materials are filed by the parties and the court is not required to take cognizance of them." <u>In re Jet 1 Ctr., Inc.</u>, 319 B.R. 11, 16 (Bankr. M.D. Fla. 2004) (citations omitted); <u>Hagerman v. Cobb Cnty., Ga.</u>, No. 1:06-CV-2246-JEC, 2008 WL 839803, at *3 (N.D. Ga. Mar. 28, 2008); <u>see also</u> 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1371, at 273 (3d ed. 2004) ("It is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one

under Rule 12(c).").

In this case, both Maldonado and Mattress Firm have presented matters outside the pleadings for the Court to consider in ruling on Mattress Firm's Motion. (Doc. ## 37-1, 44-1). However, the Court declines to consult these supplementary materials at this early stage of litigation, and instead consults only the pleadings in resolving Mattress Firm's motion.

Upon reviewing the Complaint in this case, the Court finds that Maldonado has alleged a prima facie claim under 29 U.S.C. § 207. "To establish a prima facie case for FLSA violations, a plaintiff must show three basic requirements: (1) an employment relationship, (2) that the employer engaged in interstate commerce, and (3) that the employee worked over forty hours a week but was not paid overtime wages." Ramos v. Aventura Limousine & Transp. Serv., Inc., No. 12-21693-CIV, 2012 WL 3834962, at *2 (S.D. Fla. Sept. 4, 2012) (internal quotations omitted).

Maldonado has satisfied this meager burden. Within the Complaint, Maldonado claims that he "worked for Defendants in excess of forty (40) hours within a work week," and that "[f]rom at least June 13, 2011 and continuing through June 1, 2012, Defendants failed to

compensate Plaintiff at a rate of one and one half times Plaintiff's regular rate" for the overtime hours allegedly worked. (Doc. # 1 at ¶¶ 35, 36). Maldonado additionally claims that Defendants, all of whom are alleged to be engaged in the "production of goods for commerce," hired Maldonado "to work as a non-exempt local delivery driver," and that his job entailed "making local deliveries of mattresses to the customers of Defendant [Mattress Firm] as directed by all Defendants." (Id. at ¶¶ 33, 34). These allegations are sufficient to state a claim for overtime wages under the FLSA. See Sciacca v. Vectorworks Marine, LLC, No. 6:12-cv-1255-Orl-28DAB, 2013 WL 656325, at *4 (M.D. Fla. Feb. 1, 2013) ("A simple case of unpaid overtime is not complicated to plead.").

However, Mattress Firm argues that, "[w]hen a plaintiff makes joint employer allegations, simply asserting that an entity has failed to pay overtime compensation and/or minimum wage is not sufficient to survive[ ] dismissal." (Doc. # 49 at 1). "To properly allege a joint enterprise, plaintiffs must allege facts that the two businesses (1) performed related activities, (2) through a unified operation or common control, and (3) for a common business purpose." Vignoli v. Clifton

Apartments, Inc., No. 12-cv-24508-JLK, 2013 WL 1099030, at
*2 (S.D. Fla. Mar. 13, 2013) (internal quotation omitted).
The Court finds Maldonado's allegations that he worked as a
delivery driver making local deliveries of mattresses to
customers of Mattress Firm at the collective direction of
all Defendants sufficient to satisfy the requirements
outlined in Vignoli.  (Doc. # 1 at ¶ 34).   The Court
therefore denies Mattress Firm's Motion for Judgment on the
Pleadings, and proceeds to consider Mattress Firm's
alternative Motion to Compel Arbitration.

    **B.**   **Motion to Compel Arbitration**

        **1.**   **Equitable Estoppel**

"A rule of contract law is that one who is not a party
to an agreement cannot enforce its terms against one who is
a party.  The right of enforcement generally belongs to
those who have purchased it by agreeing to be bound by the
terms of the contract themselves."  Lawson v. Life of the
South Ins. Co., 648 F.3d 1166, 1167 (11th Cir. 2011)
(internal citations omitted).  "Most legal rules have
exceptions, however, and this rule is no exception to the
rule of exceptions."  Id.

Indeed, although "arbitration is a contractual right,
the lack of a written arbitration agreement between the

parties is not always an impediment to compelling arbitration." Bahena v. Am. Voyager Indem. Ins. Co., No. 8:07-cv-1057-T-24-MSS, 2008 WL 780748, at *1 (M.D. Fla. Mar. 19, 2008). "[T]here are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration." Id. (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)). As the Eleventh Circuit explained in MS Dealer, 177 F.3d at 947:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. . . . Second, application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

Id. abrogated on other grounds, Arthur Andersen, LLP v. Carlisle, 556 U.S. 624, 631 (2009); see also Escobal v. Celebration Cruise Operator, Inc., 482 F. App'x 475, 476 (11th Cir. 2012) (finding that, although only the plaintiff

and the defendant cruise operator were signatories to the arbitration agreement, a non-signatory defendant cruise line was capable of compelling arbitration because the plaintiff's claim against the cruise line was "inextricably intertwined" with the plaintiff's claims against the signatory cruise operator). However, "a nonparty may force arbitration [only] 'if the relevant state contract law allows him to enforce the agreement' to arbitrate." Lawson, 648 F.3d at 1170 (quoting Carlisle, 556 U.S. at 632).

Under Florida law, a non-signatory to an arbitration agreement may compel a signatory to arbitrate under the theory of equitable estoppel. See Heller v. Aerospace, LLC, No. 4D12-992, 2013 WL 1748545, at *2 (Fla. 4th DCA Apr. 24, 2013) (citing Shetty v. Palm Beach Radiation Oncology Assocs. Sunderam K. Shetty, M.D., P.A., 915 So. 2d 1233, 1235 (Fla. 4th DCA 2005)).  "'Equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract.'" Shetty, 915 So. 2d at 1235 (quoting Armas v. Prudential Sec., Inc., 842 So. 2d 210, 212 (Fla. 3d DCA 2003)).  The Court finds that, in this

case, the claims Maldonado asserts against Mattress Firm arise out of the same operative facts as the claims previously compelled to arbitration.

Indeed, Maldonado's Complaint fails to distinguish between the three Defendants in this action when alleging the most fundamental elements of his FLSA claim; Maldonado asserts that he "worked for *Defendants* in excess of forty (40) hours within a work week," that "*Defendants* failed to compensate Plaintiff at a rate of one and one-half times Plaintiff's regular rate for all hours worked in excess of forty (40) hours in a single work week," that "*Defendants* failed and continue[ ] to fail to maintain proper time records as mandated by the FLSA," and that "*Defendants* have violated Title 29 U.S.C. § 207." (Doc. # 1 at ¶¶ 35, 36, 38, 43) (emphasis added). Because there is no independent claim posed against Mattress Firm alone, the Court finds this to be a case in which "the signatory to [a] contract containing [an] arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract." Shetty, 915 So. 2d at 1235. Accordingly, arbitration of Maldonado's claim against Mattress Firm is warranted under Florida law.

Although Maldonado asserts that "the issue of whether Mattress Firm was Maldonado's employer can be (and should be) decided completely independently of whether [Maldonado] is found to be an employee of the Callahan Defendants," the Court declines to sanction two separate proceedings on Maldonado's fundamentally related claims against the Defendants, as these claims will likely involve substantially overlapping issues of fact.[1]   The Court acknowledges the Eleventh Circuit's warning that "a court cannot shoehorn pendent non-arbitrable claims into arbitration based on 'its own views of economy and efficiency.'"   Community State Bank v. Strong, 651 F.3d 1241, 1271 n.32 (11th Cir. 2011).   However, the Court finds that this case fits neatly within the abovementioned exception recognized by Florida courts.   That is, "when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially

---

[1]  Notably, "Florida courts have applied equitable estoppel to allow a non-signatory to compel a signatory to arbitrate where the signatories were already involved in arbitration."  Marcus v. Fla. Bagels, LLC, No. 4D12-2971, 2013 WL 1748533, at *3 (Fla. 4th DCA Apr. 24, 2013) (citing Shetty, 915 So. 2d at 1234-35; Armas, 842 So. 2d at 211-12; Lash & Goldberg LLP v. Clarke, 88 So. 3d 426, 427-28 (Fla. 4th DCA 2012); MS Dealer Serv. Corp., 177 F.3d at 945 n.1.).  This consideration applies in the instant case, in which Maldonado's claim against the Callahan Defendants has already been compelled to arbitration.

interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," equitable estoppel allows a nonsignatory to compel arbitration. <u>Bahena</u>, 2008 WL 780748, at *2; <u>Shetty</u>, 915 So. 2d at 1235. By failing to distinguish between the actions of the Defendants in his FLSA Complaint, Maldonado has effectively asserted such "interdependent and concerted misconduct" by Mattress Firm and the Callahan Defendants.

To refute Mattress Firm's assertion that equitable estoppel is appropriate to compel arbitration in this case, Maldonado argues that, in <u>Lawson v. Life of the South Ins. Co.</u>, 648 F.3d 1166, 1167-68 (11th Cir. 2011), the Eleventh Circuit "explained that many of [its] decisions involving the question of whether a non-party can enforce an arbitration clause against a party have not made clear that the applicable state law provides the rule of decision for that question," and that some of those decisions "are cited by Mattress Firm, including [MS Dealer]." (Doc. # 44 at 13). The Court agrees with Maldonado's characterization of <u>Lawson</u>. In that case, the Eleventh Circuit clarified that

> [m]any of this Court's decisions involving the
> question of whether a non-party can enforce an
> arbitration clause against a party have not made
> clear that the applicable state law provides the
> rule of decision for that question. However, the

> Supreme Court's 2009 decision in <u>Carlisle</u>, which postdates all of those decisions of this Court, clarifies that state law governs that question, and to the extent any of our earlier decisions indicate to the contrary, those indications are overruled or at least undermined to the point of abrogation by <u>Carlisle</u>.

648 F.3d at 1170-71 (internal citations omitted). However, Maldonado does not argue that Florida law would prevent application of equitable estoppel in this case, nor does Maldonado indicate any portion of the Motion at issue which contradicts <u>Lawson</u>'s warning that state law governs whether a non-party can enforce an arbitration clause against a party. Accordingly, this argument has no bearing on the Court's analysis.

### B.   **Waiver**

"[T]here are three elements to consider in determining whether to compel arbitration: (1) whether a valid arbitration provision exists, (2) whether there is an arbitrable issue, and (3) whether the right to arbitrate has been waived." <u>Shetty</u>, 915 So. 2d at 1234. The parties do not dispute the first two elements. However, Maldonado argues that Mattress Firm waived the right to compel arbitration "by filing an answer and seeking a ruling from this Court regarding the ultimate merits of the case." (Doc. # 44 at 16). To support the argument that filing

14

an answer to a complaint constitutes an act inconsistent with a defendant's intent to arbitrate, Maldonado cites Garcia v. Acosta Tractors, Inc., No. 12-21111-CIV, 2013 WL 462713 (S.D. Fla. Feb. 7, 2013).   In Garcia, however, the defendants were signatories to an arbitration agreement with the Plaintiff.   See id. ("[F]or approximately six months, the Defendants herein not only did not request that the action be submitted to arbitration, *despite their right to do so under the clear language of the arbitration clauses* signed by the Plaintiffs, the Defendants also proceeded in a manner which seemingly manifested an intent to not proceed to arbitration, including failing to refer to arbitration in their Answer [and] attending a settlement conference before the undersigned . . . .") (emphasis added).

In contrast, Mattress Firm recognizes that is not a signatory to any arbitration agreement with Maldonado that might apply to the FLSA claims at issue.   Consequently, as previously discussed, Mattress Firm seeks to compel arbitration of these claims through the theory of equitable estoppel.   Because Mattress Firm is not, and does not claim to be, a party to the arbitration agreement in this case, the Court finds Garcia inapposite.   Mattress Firm filed its

Motion for Judgment on the Pleadings or, in the Alternative, Motion to Compel Arbitration only one month after the Callahan Defendants filed their Motion to Dismiss or, in the Alternative, Compel Arbitration, to which the Callahan Defendants attached the relevant agreement. The Court accordingly finds that, given the circumstances of this case, Mattress Firm has not acted inconsistently with its intent to arbitrate the dispute.

### C. "Specific Exclusion"

Lastly, Maldonado argues that its claims against Mattress Firm should not be compelled to arbitration because "the [Independent Contractor's Agreement] shows that Mattress Firm was specifically excluded while other clients of the Callahan Defendants are incorporated by reference." (Doc. # 44 at 13). To support this argument, Maldonado cites to two particular provisions within the Agreement. (Id. at 3, 13). The first provision is a subsection under the heading "Non-Competition." That subsection provides:

**10. Non-Competition.** During and after the term of this Agreement, and for a period of six months after the termination of this Agreement; Contractor shall not:

10.1 directly or indirectly, with or without compensation, engage in, be employed by or

16

> have any interest . . . in any business,
> company or firm engaged in a business
> similar to the Company's within a radius of
> fifty miles of any premises[ ] of the
> Company at or from which the Company
> business is carried on at the date of the
> termination of this Agreement including but
> not limited to: IKEA, OFFICE DEPOT and 3PD.

(Agreement Doc. # 37-2 at ¶¶ 10, 10.1). The Court finds this non-competition provision irrelevant to the disposition of the instant Motion. The legal basis for Mattress Firm's Motion to Compel Arbitration -- equitable estoppel -- does not rely on any mention or omission of Mattress Firm as a "business, company or firm engaged in a business similar to [that of the Callahan Defendants]," especially in light of the Agreement's "including-but-not-limited-to" language.

The second provision is a paragraph entitled "Benefits; Binding Effects," which provides: "This Agreement shall be binding upon and shall operate[ ] for the benefit of the parties hereto and their respective executors, administrators, successors, and assigns[.]" (Id. at ¶ 22). The Court is equally unconvinced that this provision somehow precludes application of the doctrine of equitable estoppel to compel arbitration of Maldonado's FLSA claims against Mattress Firm. Again, Mattress Firm

17

does not claim entitlement to any arbitration rights under the Agreement.   The contents of this paragraph are immaterial to the Court's application of equitable estoppel in the instant case.

## III. <u>Conclusion</u>

The Court grants Mattress Firm's Motion to the extent that the Court compels arbitration of Maldonado's FLSA claims against Mattress Firm.  Although Mattress Firm is not a party to the Independent Contractor's Agreement between Maldonado and the Callahan Defendants, the Court finds that employing the theory of equitable estoppel to require Maldonado to arbitrate his claims against Mattress Firm is appropriate in this case.  Because Maldonado's FLSA claims against Mattress Firm are inextricably intertwined with his claims against the Callahan Defendants, and because the Court has already determined that enforcement of the arbitration agreement between Maldonado and the Callahan Defendants is appropriate in this case, the Court grants Mattress Firm's Motion to Compel Arbitration. Accordingly, the Court directs the Clerk to terminate Defendant Mattress Firm as a party in this matter, and thereafter to close this case.  <u>See</u> <u>Kozma v. Hunter Scott Fin., LLC</u>, No. 09-80502-CIV, 2010 WL 724498, at *2 (S.D.

Fla. Feb. 25, 2010) ("The . . . Eleventh Circuit has not directly addressed this issue, but has frequently affirmed where the district court compelled arbitration and dismissed the underlying case."); <u>Miccosukee Tribe of Indians of Fla. v. Cypress</u>, No. 12-cv-22439, 2013 WL 2158422, at *6 (S.D. Fla. May 17, 2013) (same).

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)  Defendant Mattress Firm's Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c), or in the Alternative, Motion to Compel Arbitration (Doc. # 37) is granted to the extent that the Court compels arbitration of Maldonado's claim against Mattress Firm.    The Motion is otherwise denied.

(2)  The Clerk is directed to terminate Defendant Mattress Firm as a party in this matter, and thereafter to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u> day of June, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record