UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:13-cv-00292-T-33AEP

LUIS MALDONADO, on behalf of
himself and those similarly situated,

      Plaintiff,

v.

CALLAHAN'S EXPRESS DELIVERY, INC., and
PATRICK CALLAHAN, individually,

      Defendants.

_____/

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Middle District of Florida, Plaintiff Luis Maldonado ("Plaintiff" or "Maldonado"), on behalf of himself and those similarly situated (collectively "Plaintiffs"), files the instant Motion for Summary Judgment and Incorporated Memorandum of Law.

By their instant Motion, Plaintiffs seek summary judgment finding: (1) Defendants are an enterprise within the meaning of the Fair Labor Standards Act ("FLSA"); (2) Each of the Defendants (jointly) employed Plaintiffs within the meaning of the FLSA; (3) Based on the economic reality of their employment, Plaintiffs were employees of Defendants as opposed to independent contractors; (4) The Motor Carrier Act exemption ("MCA") to the FLSA does not apply to Plaintiffs' employment; and (5)

Defendants failure to pay Plaintiff overtime wages was willful, and not in good faith, such that Plaintiffs are entitled to liquidated damages.

## <u>SUMMARY OF THE ARGUMENT</u>

Defendants, CALLAHAN'S EXPRESS DELIVERY INC., ("CED"), AND PATRICK CALLAHAN ("Callahan") (collectively "Defendants"), contract to make local delivery of mattresses, furniture and other goods on behalf of their retailer customers like Mattress Firm and IKEA. .  Plaintiffs worked for Defendants as Delivery Drivers and/or as Delivery Drivers' Helpers.  Regardless of whether each Plaintiff was employed as a Delivery Driver or a Drivers' Helper, all were paid on a piece rate basis throughout the duration of their employment, as determined by Defendants, that was based on the number and type of jobs they completed for Defendants and Defendants' customers/clients.  Despite the fact that Plaintiffs regularly worked in excess of forty (40) hours per week, Defendants failed to pay Plaintiffs their FLSA mandated overtime premiums for those hours worked over forty (40) each week.   Thus, Plaintiffs seek repayment of their rightful overtime wages in this case.

The Delivery Drivers and/or Drivers Helpers who are Plaintiffs in this case are employees as a matter of law.  In order to determine whether an individual should be classified as an employee or an independent contractor, the Courts apply the "economic realities test".  *See Rezendez v. Domenick's Blinds & Décor, Inc*., 2015 WL 3484835, at *10 (M.D. Fla. June 2, 2015) (Covington, J.). "This test requires the Court to 'look past the labels the parties apply to their relationship, and to examine both whether Plaintiff's relationship to Defendants is that of a traditional employee and to what extent Plaintiff is economically dependent upon Defendants.'"  *Id.* (citing *Castro v. Sevilla Props., LLC,*

2013 WL 6858398 (S.D. Fla. Dec. 30, 2013).  The factors that the Eleventh Circuit considers in determining whether an individual is considered an employee or an independent contractor include:  (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business.  *Id.* Here, each and every one of these factors gravitate in favor of finding that Plaintiffs were Defendants' employees.

Likewise, the undisputed facts demonstrate that Patrick Callahan was Plaintiffs' employer, in addition to CED.  Patrick Callahan owned CED.  It is undisputed that Patrick Callahan hired Plaintiffs, set Plaintiffs' pay, directly supervised Plaintiffs on a day-to-day basis, and controlled all aspects of CED's finances and operations.  Similarly, it is undisputed that Patrick Callahan had the authority to hire and fire all employees on behalf of CED, and instructed Plaintiffs to do specific tasks.  Thus, at all times Defendants' employed Plaintiffs, Callahan determined Plaintiffs' pay, their conditions of work, scheduled their work hours, and assigned Plaintiffs their job duties on a daily basis.  As such Patrick Callahan is an employer under the FLSA.

Defendants admit that, at all times relevant to the instant claims, they had gross annual revenues in excess of $500,000.00 per annum.  Further, on a daily basis, throughout Plaintiffs' employ, two or more of Defendants' employees handled

"materials" that had previously travelled in interstate commerce.  Thus, Defendants are covered by the FLSA, as it relates to Plaintiffs' employment.

Further, Defendants do not claim that their failure to pay Plaintiff appropriate overtime wages, was based on any good faith effort to comply with the FLSA.  To the contrary, the Defendants have admitted that their failure to compensate Plaintiffs at a rate of time and one-half for Claimant's hours worked in excess of forty (40) in a work week, constitutes a violation of the FLSA.  In fact, Defendants never consulted with an attorney, or the Department of Labor as to whether their illegal payment scheme which is at issue in this case complied with the FLSA.  Therefore, Plaintiffs are entitled to liquidated damages, in addition to their underlying damages.  Furthermore, despite of the requirements to do so under the FLSA, the Defendants admit that the records maintained by them do not provide them with a basis for determining the precise number of hours worked by the Plaintiffs during each work week.  The Defendants have simply ignored the recordkeeping and overtime requirements of the FLSA, and the Defendants' violation of same is willful and not in good faith.

<u>**STATEMENT OF UNDISPUTED FACTS**</u>

**A.**     <u>**FLSA Coverage.**</u>

1.     Defendants admit that their annual gross revenues exceeded $500,000.00 per year, during the time periods relevant to Plaintiff's claim.  *See* Claimant Luis Maldonado's First Request for Admissions to CED & Callahan, attached collectively hereto **EXHIBITS A** and **B**, respectively, at ¶¶ 12-14.[1]

---

[1] Defendants failed to respond to Plaintiff's First Request for Admissions within thirty (30) days after service of same.  Thus, Defendants are deemed to have admitted same as a matter of law.  *See* Fed. R. Civ. Proc. 36(a)(3); *see also* Order [D.E. 96].

2.      At all relevant times material hereto Defendants employed more than two employees in order to operate their business.   *See* Declaration of Luis Maldonado ("Maldonado Decl."), attached hereto as **EXHIBIT C**, at ¶ 5; Declaration of Johnny Machado ("Machado Decl."), attached hereto as **EXHIBIT D**, at ¶ 5.

3.      At all times material hereto, Defendants had two (2) employees regularly handling goods and materials that originated outside of the State of Florida.  *See* Exhibits A and B at ¶ 17.

**B.      Patrick Callahan was an employer of Plaintiffs.**

4.      Defendant, CED is a Florida for Profit Corporation engaged in the business of making local deliveries of mattresses and other furniture to the customers of Mattress Firm and Ikea in Central Florida.  *See* D.E. 1 at ¶ 34; Machado Decl. at ¶¶ 5-6; Maldonado Decl. at ¶¶ 6, 8-9; Florida Division of Corporations Entity Search Results, attached hereto as **EXHIBIT E.**

5.      Defendant, Patrick Callahan the sole owner of CED.

6.      Patrick Callahan is the President of CED.  *See* Exhibit E.

7.      Patrick Callahan interviews candidates for open positions, hires employees on behalf of CED, sets the pay of CED's employees and schedules the work of CED's employees. *See* Maldonado Decl. ¶¶ 6-13, 17-19; Machado Decl. ¶¶ 6-9, 12, 20.

8.      Patrick Callahan hired Plaintiffs on behalf of CED.  *See* Maldonado Decl. ¶ 7; Machado Decl. ¶ 9.   Additionally, Patrick Callahan had the ability to terminate Plaintiffs if they did not fulfill their job duties.  *See* Maldonado Decl. ¶ 16.

9.      Patrick Callahan hired Plaintiffs, determined Plaintiffs' rate of pay (the piece rate per delivery), determined and dictated Plaintiffs' hours, schedule and

conditions of work, and specifically told Plaintiffs what duties to perform on a daily basis.  *See* Maldonado Decl. ¶¶ 3-13, 19; Machado Decl. ¶¶ 7-9, 12, 15-17, 20.

      **C.**    <u>**Plaintiffs were employees and not independent contractors.**</u>

10.    During their employment, Defendants required each Plaintiff to sign an independent contractor agreement unilaterally drafted by Defendants.  However, the economic reality of their employment demonstrates that Plaintiffs were Defendants' employees as a matter of law, and not independent contractors.

11.    Defendants admit that the work performed by Plaintiffs was integral to Defendants' business.  *See* Plaintiff's Second Request for Admissions to Patrick Callahan, attached hereto as **EXHIBIT F**, at ¶ 29; Patrick Callahan's Responses, attached hereto as **EXHIBIT G**, at ¶ 29.

12.    Patrick Callahan, sole owner and President to CED, had the power to hire and fire Plaintiffs.  *See* Maldonado Decl. at ¶¶ 7, 16 ("After a short telephone interview with Defendant, Patrick W. Callahan, he hired me and told me where and when I should report for work the following day." . . . "I understood that if I failed to call out and simply failed to show up for work, I could and would be terminated.  In fact, during my employment Defendants terminated multiple drivers when they failed to appear for work more than once without calling out."); *see also* Machado Decl. ¶ 9.

13.    Defendants supervised and controlled employee work schedules and conditions of employment, including those of Plaintiffs.  *See* Maldonado Decl. at ¶ 8 (". . . Defendants dictated where and to whom I was to report for work each day."); *id.* at ¶ 10 (". . . Defendants and/or their clients gave me a pre-set schedule of my deliveries for the day, and gave me a specific window of time within which each delivery had to be

made."); *id.* at ¶ 11 ("I had no say in my schedule each day, and could not choose where to work, when to work, the hours of my work, or the number or location of my deliveries each day."); *id.* at ¶ 13 ("I did not manage any aspect of my work."); *id.* at ¶ 14 ("Throughout my employment, I was required to arrive at work at 7:00 am each day, and work until all of my assigned deliveries were complete."); *see also* Machado Decl. at ¶ 7 ("Throughout my employment, Defendants directed all aspects of my work."); *id.* at ¶ 8 ("Defendants assigned me a list of deliveries I was to make each day and scheduled the specific times I was required to make such deliveries."); *id.* at ¶12 (". . .Defendants and/or their clients gave me a pre-set schedule of my deliveries for the day, when to work, the hours of my work, or the location of my deliveries each day."); *id.* at ¶ 15 ("Defendants provided specific guidelines we were to follow when performing each delivery and managed every aspect of my work. In fact, I interacted with Callahan on a daily basis about the deliveries and other work related matters."); *id.* at ¶ 17 ("I was required to wear a specific uniform for each account throughout my employment with Defendants."); *id.* at ¶ 20 ("Throughout my employment Defendants set my work schedule and dictated my hours worked each week.").

14.     Defendants admit that each work order that Plaintiffs completed had a time window within which the work had to be completed, dictated by Defendants and/or their customers.  *See* **EXHIBIT F**, at ¶ 13; **EXHIBIT G**, at ¶ 13; *see also* Plaintiff's Second Request for Admissions to CED, attached hereto as **EXHIBIT H**, at ¶ 13; CED's Responses, attached hereto as **EXHIBIT I**, at ¶ 13.

15.     Defendants determined the rate and method of payment for Plaintiffs.  *See* Maldonado Decl. ¶ 6 ("Throughout my employment, I was paid solely piece rates of

$10.00 per delivery.); *id*. at ¶ 12 ("Callahan Determined both the method of my pay (piece rates) and the amount ($10/delivery)"); *id*. at ¶ 13 ("I did not manage any aspect of my work.   Rather, each day I made the deliveries I was assigned, during specific windows of time, and was paid the $10.00 per delivery that Callahan set as my pay on a weekly basis."); *see also* Machado Decl. ¶ 14 ("During my employment, if there were any issues regarding our deliveries, Defendants deducted money from our paychecks without any discussion as to why or what occurred.  On at least one occasion, Defendants docked my pay after a customer complained that her delivery was damaged.").

16.    Plaintiffs had "no opportunity to garner additional income or profit through the exercise of managerial skill or increased efficiency in the manner or means of accomplishing the work," since they were paid an amount set by Defendants per delivery based on a set amount of deliveries per day. *Rezendez v. Domenick's Blinds & Décor, Inc.*, 2015 WL 3484835, at *12 (M.D. Fla. June 2, 2015) (Covington, J.); *see also* Maldonado Decl. ¶ 6 ("Throughout my employment, I was paid solely piece rates of $10.00 per delivery."); *id*. at ¶ 13 (" . . . and was paid $10.00 per delivery that Callahan set as my pay on a weekly basis."); Machado Decl. ¶ 24 (". . . I was paid solely per delivery."); *see supra* ¶¶ 13, 15.

17.    Defendants admit that Plaintiffs compensation was based on the number and type of jobs they completed for Defendant and its customers/clients. *See* **Exhibit F**, at ¶ 21; **Exhibit G**, at ¶ 21; *see also* **Exhibit H**, at ¶ 21; **Exhibit I**, at ¶ 21.

18.    None of the Plaintiffs made any significant investment in regard to the materials required to complete their work.  *See* Maldonado Decl. at ¶ 20 ("Neither I nor any of the other drivers made any investment of significance in our work."); *id*. at ¶ 21

("The only thing I was required to bring were basic hand tools which I already owned and my personal cell phone."); *id.* at ¶ 22 ("Whereas, Defendants incurred tens of thousands of dollars in business costs each month related to the delivery trucks, my 'investment' was limited to less than $100 per month, or the cost of my cell phone bill").

19.     Defendants admit that they owned all of the trucks that Plaintiffs used for work.  *See* **Exhibit F**, at ¶ 24; **Exhibit G**, at ¶ 24; *see also* **Exhibit H**, at ¶ 24; **Exhibit I**, at ¶ 24.

20.     Defendants provided trucks, gas for the trucks, insurance for the trucks, maintenance for the trucks, rugs, and tools.  *See* Maldonado Decl. ¶¶ 17-18 ("Likewise if there was an issue with the truck that Callahan assigned me to drive, I was required to contact Callahan to resolve any such issue."); *id.* at ¶ 20 (". . . Defendants provided the trucks we were required to drive, paid for our gas, and covered the insurance on the trucks."); *see also* Machado Decl. ¶ 18 ("Defendants provided me with a delivery truck for all deliveries I made on Defendants' behalf."); *id.* at ¶ 19 ("Defendants paid for the gas, maintenance, insurance, rugs, tools, and respire of all vehicles.").

21.     Plaintiffs were unskilled laborers, and their employment with Defendants did not require any special skill or specialized knowledge.  *See* Machado Decl. at ¶ 10 ("Because our work involved basic labor, we were not required to undergo any specific training to perform our duties.").

22.     Defendants admit that Plaintiffs' work was on an indefinite nature in that there was no specific stop date, until such time that each of the Plaintiffs separated their employment.  *See* **Exhibit F**, at ¶ 27; **Exhibit G**, at ¶ 27; *see also* **Exhibit H**, at ¶ 27; **Exhibit I**, at ¶ 27.  Indeed, the employment of the individual Plaintiffs most frequently

lasted approximately a year or more.  *See* Maldonado Decl. ¶ 5 ("From June 2011, through June 2012, I was employed by Defendants. . ."); Machado Decl. ¶ 5 ("From approximately February 2012 through May 2013 I worked for [Defendants]").

23.     Defendants intentionally misclassified Plaintiffs as independent contractors to avoid paying taxes, social security contributions, and insurance premiums. *See* Maldonado Decl. ¶ 24.

> **D.      Plaintiffs are not exempt by the FLSA Motor Carrier Act Exemption.**

24.     Plaintiffs never drove outside of the State of Florida in the performance of their job duties.  *See* Exhibits A and B at ¶ 18; *see also* Maldonado Decl. at ¶ 9 ("I never drove out of State for Defendants.  Instead, my work consisted of making local deliveries each day, as assigned to me by Defendants and/or Defendants' clients.").

25.     Defendants admit that Plaintiffs were solely responsible for local deliveries within the State of Florida, for items that they picked up within the State of Florida.  *See* **Exhibit F**, at ¶ 32; **Exhibit G**, at ¶ 32; *see also* **Exhibit H**, at ¶ 32; **Exhibit I**, at ¶ 32.

26.     Defendants admit that Plaintiffs had no reasonable expectation that they would be required to drive outside of the State of Florida in the performance of his job duties.  *See* Exhibits A& B at ¶ 19.

27.     Defendants admit that Plaintiffs never drove outside of the State of Florida while working for Defendants.  *See* **Exhibit F**, at ¶ 30; **Exhibit G**, at ¶ 30; *see also* **Exhibit H**, at ¶ 30; **Exhibit I**, at ¶ 30.

> **E.      Defendants' lack of good faith permit liquidated damages.**

28.     Defendants did not plead an affirmative defense of "good faith" in the

instant action, and thus such an affirmative defense is waived as a matter of law.

29.     Defendants admit that they never consulted with an attorney, prior to the commencement of the instant lawsuit, regarding whether the pay policy at issue in this case complied with the FLSA. *See* Exhibits A & B at ¶ 10.

30.     Defendants admit that they never requested an opinion, from the United States Department of Labor, prior to the commencement of this instant lawsuit, regarding whether the pay policy at issue in this case complied with the FLSA. *See* Exhibits A & B at ¶ 11.

31.     Defendants admit that during one or more work weeks during Plaintiff's employment with Defendants, Plaintiffs worked in excess of forty hours in a work week. *See* Exhibits A & B at ¶ 1.

32.     Defendants admit that for those weeks that Plaintiffs worked in excess of forty hours for Defendants, Plaintiffs were not paid time and one half of their regular rate of pay for the hours worked by them in excess of forty. *See* Exhibits A & B at ¶ 2.

33.     Defendants have failed to present any evidence of "good faith" whatsoever, and thus any FLSA violations are necessarily "willful."

## MEMORANDUM OF LAW

### A.  Standard on Motion for Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315,

1320 (11th Cir.2006) (citation omitted).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (citation omitted).

### B. Defendants Were An Enterprise Covered By The FLSA.

Here, the Defendants acknowledge that they had annual gross revenue in excess of $500,000.00 during the periods of time relevant to Plaintiff's instant claim.  *See supra* ¶ 1.  Thus, the only remaining inquiry is whether the Defendants' business meets the "interstate commerce" requirements of the FLSA.  Because, it is clear that the Defendants' regularly and customarily had two (2) or more employees handling "materials" that had previously moved in interstate commerce, the Defendants are covered by the FLSA.

An employee bringing a claim for unpaid overtime under the Fair Labor Standards Act must establish at least one of the following: "individual coverage" or "enterprise coverage". *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1265-66 (11th Cir. 2006).  Either will trigger application of the Act. *Id.* Individual coverage lies where the employee is engaged in commerce or the production of goods for commerce. 29 U.S.C. § 207(a)(1). Enterprise coverage exists where the employee works for an enterprise with annual sales in excess of $500,000.00 that is also 1) engaged in commerce or in the production of goods for commerce, *or* 2) an enterprise that has employees

handling, selling, or otherwise working on goods or materials that have moved in or been produced for interstate commerce. 29 U.S.C. § 203(s)(1)(A).  Under the second prong above, companies that routinely purchase goods or materials that are handled, sold, or otherwise worked on by two or more employees, directly from across state lines, are subject to the FLSA by way of "enterprise coverage."  *See Lira v. Matthew's Marine Air Conditioner, Inc*., 2010 WL 3835002, at *3 (S.D. Fla. Sept. 28, 2010).  The term "materials" remains undefined by the statute and, unlike "goods," is not subject to any "ultimate-consumer" exception. *Id*.  The Eleventh Circuit has defined "materials" as "tools or other articles necessary for doing or making something." *Polycarpe v. E & S Landscaping, Inc.,* --- F.3d ----, 2010 WL 3398825, at *6 (11th Cir. August 31, 2010).

In *Polycarpe,* the Eleventh Circuit considered six different FLSA cases, all consolidated for the purpose of appeal, to resolve existing controversy regarding several aspects of the Act.  In each of the six cases, the district court ultimately ruled in favor of the employer-defendants, concluding that the FLSA did not apply because the employers made their purchases of potentially qualifying "goods" or "materials" after the same had "come to rest" intrastate, and that the nexus to interstate commerce was therefore insufficient to trigger FLSA coverage. *Polycarpe,* 2010 WL 3398825, at *1.

In each case but one, the judgments were vacated and the cases remanded. *Id.* at *10-11.  The Eleventh Circuit held that the "coming to rest" doctrine is inapplicable in the "enterprise coverage" context and made clear that it is the *origin* of the alleged goods and materials, and not any subsequent intrastate purchase, that controls. *Id.* at *9, n. 10. ("The inquiry for enterprise coverage under the FLSA is whether the 'goods' or 'materials' were in the past produced in or moved interstate, *not whether they were most*

*recently purchased intrasate.*" (emphasis added)).

Here, Defendants admitted that their annual gross revenues exceeded $500,000.00 per year, during the time periods relevant to Plaintiffs' claims. *See* **Exhibits A and B**, at ¶¶ 12-14.   Additionally, it is undisputed that at all relevant times material hereto Defendants employed more than two employees in order to operate their business.  *See* Maldonado Decl. at ¶ 5; Machado Decl. at ¶ 5.  Furthermore, in light of Defendants' admission that at all times material hereto, Plaintiffs regularly handled goods and materials that originated outside of the State of Florida, and thus previously traveled in interstate commerce, as discussed above, the Defendants are an enterprise subject to the coverage of the FLSA.  *See* Exhibits A and B at ¶ 17.

### C. <u>Patrick Callahan was Plaintiffs' Employer Pursuant To The FLSA.</u>

Under the FLSA, employers must pay covered employees minimum and overtime wages.  29 U.S.C. §§ 206, 207.  The Act broadly defines "employer" to "include[ ] any person acting directly or indirectly in the interest of an employer in relation to an employee."  *Olivas v. A Little Havana Check Cash, Inc*., 2009 WL 1109342 (11th Cir. 2009), quoting 29 U.S.C. § 203(d).  In *Patel v. Wargo,* 803 F.2d 632, 637-38 (11th Cir.1986), the Eleventh Circuit concluded that status as a corporate officer alone is insufficient to render an individual an "employer" to hold the officer personally liable for unpaid wages.  Rather, the *Patel* Court held that to be personally liable as an "employer," a corporate officer "must either be involved in the day-to-day operation <u>or</u> have some direct responsibility for the supervision of the employee."  *Id.* at 638 (emphasis added). In determining whether a corporate officer is an "employer," the Eleventh Circuit has inquired as to whether the officer was involved in the compensation of employees, the

hiring or firing of employees, or other matters "in relation to an employee." *Perez v. Sanford-Orlando Kennel Club, Inc*., 2008 WL 220070, 515 F.3d at 1161 (11th Cir. 2008); *Patel,* 803 F.2d at 638; *see also* 29 U.S.C. 203(d). Where, as here, the corporate officer (Patrick Callahan) was/is involved in the compensation of employees, the hiring and/or firing of employees and other day to day supervisory decisions regarding the employee, the corporate officer is an "employer" within the meaning of the FLSA. *See Olivas*, supra.

Here, Patrick Callahan, the owner of CED, is properly deemed Plaintiffs' employer. It is undisputed that Patrick Callahan interviews candidates for open positions, hires employees on behalf of CED, sets the pay of CED's employees and schedules the work of CED's employees. *See* Maldonado Decl. ¶¶ 6-13, 17-19; Machado Decl. ¶¶ 6-9, 12, 20. Additionally, Patrick Callahan had the ability to terminate Plaintiffs if they did not fulfill their job duties. *See* Maldonado Decl. ¶ 16. Patrick Callahan hired Plaintiffs, determined Plaintiffs' rate of pay (the piece rate per delivery), determined and dictated Plaintiffs' hours, schedule and conditions of work, and specifically told Plaintiffs what duties to perform on a daily basis. *See* Maldonado Decl. ¶¶ 3-13, 19; Machado Decl. ¶¶ 7-9, 12, 15-17, 20.

Therefore, in light of the undisputed evidence, there is no question that Defendant Patrick Callahan, along with CED, were both Plaintiffs' employers under the FLSA.

## C.  Plaintiffs were "employees" as opposed to "independent contractors"and were thus entitled to time and one-half compensation for their overtime hours worked.

The overtime provisions of the FLSA "apply to employees, but not independent contractors." *Rezendes v. Domenick's Blinds & Decor, Inc.*, 2015 WL 3484835, at *10

(M.D. Fla. June 2, 2015) (Covington, J.); *see also Perdomo v. Ask 4 Realty & Mgmt., Inc.,* 298 F. App'x 820, 821 (11th Cir. 2008). "A determination of employment status under the FLSA ... is a question of law." *Perdomo,* 298 F. App'x at 821.  In determining whether an individual is an employee, instead of an independent contractor, courts apply the "economic realities" test. *Rezendes,* 2015 WL 3484835, at *10.  "This test requires the Court to 'look past the labels the parties apply to their relationship, and to examine both whether Plaintiff's relationship to Defendant is that of a traditional employee and to what extent Plaintiff is economically dependent upon Defendants.'" *Id.*, citing *Castro v. Sevilla Props.,* LLC, No. 13–cv–22466, 2013 WL 6858398 (S.D. Fla. Dec. 30, 2013).

The Eleventh Circuit considers several factors in determining whether an individual is an employee or an independent contractor.  Among those factors are:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship; and
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Rezendes,* 2015 WL 3484835, at *10.  In *Rezendes*, the Middle District of Florida noted that "no one factor is outcome determinative, nor is the list exhaustive."  *Id.*

In regard to the nature and degree of control, the Eleventh Circuit had found that the factors relevant to the control inquiry are "whether the alleged employer: (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined the rate and method of payment,

and (4) maintained employment records." *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).

Here, the undisputed facts demonstrate that Defendants exercised the requisite degree of control over Plaintiffs to establish that they are employees and not independent contractors.   Patrick Callahan, sole owner and President to CED, had the power to hire and fire Plaintiffs from employment.  *See* Maldonado Decl. at ¶¶ 7, 16 ("After a short telephone interview with Defendant, Patrick W. Callahan, he hired me and told me where and when I should report for work the following day." . . . "I understood that if I failed to call out and simply failed to show up for work, I could and would be terminated.  In fact, during my employment Defendants terminated multiple drivers when they failed to appear for work more than once without calling out."); *see also* Machado Decl. ¶ 9. Additionally, Defendants supervised and controlled employee work schedules and conditions of employment. *See supra* ¶ 13. Defendants admit that each work order that Plaintiffs completed had a time window within which the work had to be completed.  *See* **Exhibit F**, at ¶ 13; **Exhibit G**, at ¶ 13; *see also* **Exhibit H**, at ¶ 13; **Exhibit I**, at ¶ 13. Furthermore, Defendants determined the rate and method of payment for Plaintiffs.  *See supra* ¶ 15.  Therefore, it is manifestly clear that Defendants exercised a significant degree of control over Plaintiffs so as to satisfy the control requirement.

In regard to the opportunity for profit or loss "Courts may find independent contractor status when a worker is able to garner additional income or profit through the exercise of managerial skill or increased efficiency in the manner or means of accomplishing the work."  *Rezendes*, 2015 WL 3484835, at *12.  In the case at bar, Plaintiffs had "no opportunity to garner additional income or profit through the exercise

of managerial skill or increased efficiency in the manner or means of accomplishing the work," since they were paid an amount set by Defendants per delivery based on a set amount of deliveries per day. *Rezendez*, 2015 WL 3484835 at *12 (June 2, 2015 M. D. Fla.); *see also* Maldonado Decl. ¶ 6 ("Throughout my employment, I was paid solely piece rates of $10.00 per delivery."); *id.* at ¶ 13 (". . . and was paid $10.00 per delivery that Callahan set as my pay on a weekly basis."); Machado Decl. ¶ 24 (". . . I was paid solely per delivery."); *see supra* ¶ 16. Rather, Defendants admit that Plaintiffs compensation was based on the number and type of jobs they completed for Defendant and its customers/clients. *See* **Exhibit F**, at ¶ 21; **Exhibit G**, at ¶ 21; *see also* **Exhibit H**, at ¶ 21; **Exhibit I**, at ¶ 21.

Furthermore, while "[c]ourts may find independent contractor status when a worker invests in equipment or materials required for completing his tasks, or hires other workers to assist him in the completion of his tasks," (*Rezendez*, 2015 WL 3484835 at *12), here, none of the Plaintiffs made such an investment. *See* Maldonado Decl. at ¶ 20 ("Neither I nor any of the other drivers made any investment of significance in our work."); *id.* at ¶ 21 ("The only thing I was required to bring were basic hand tools which I already owned and my personal cell phone."); *id.* at ¶ 22 ("Whereas, Defendants incurred tens of thousands of dollars in business costs each month related to the delivery trucks, my 'investment' was limited to less than $100 per month, or the cost of my cell phone bill").

Likewise, Defendants admit that they owned all of the trucks that Plaintiffs used for work. *See* **Exhibit F**, at ¶ 24; **Exhibit G**, at ¶ 24; *see also* **Exhibit H**, at ¶ 24; **Exhibit I**, at ¶ 24. Defendants provided trucks, gas for the trucks, insurance for the trucks,

18

maintenance for the trucks, rugs, and tools.  *See* Maldonado Decl. ¶ 17-18 ("Likewise if there was an issue with the truck that Callahan assigned me to drive, I was required to contact Callahan to resolve any such issue."); *id.* at ¶ 20 (". . . Defendants provided the trucks we were required to drive, paid for our gas, and covered the insurance on the trucks."); *see also* Machado Decl. ¶ 18 ("Defendants provided me with a delivery truck for all deliveries I made on Defendants' behalf."); *id.* at ¶ 19 ("Defendants paid for the gas, maintenance, insurance, rugs, tools, and respire of all vehicles.").

Moreover, as this Court has explained  "[a] lack of specialization indicates that an individual is an employee, not an independent contractor." *Rezendez*, 2015 WL 3484835 at *13.  Here, the Plaintiffs were unskilled laborers who delivered mattresses and other furniture without any type of training, and their employment with Defendants did not require any special skill or specialized knowledge.  *See* Machado Decl. at ¶ 10 ("Because our work involved basic labor, we were not required to undergo any specific training to perform our duties.").  The lack of specialization involved in the performance of Plaintiffs' job duties dictates that they are employees under the FLSA.

As this Court recognized in *Rezendes*, indefinite employment favors a finding of employee status.  2015 WL 3484835 at *13.  Here, Defendants admit that Plaintiffs' work was on an indefinite nature.  *See* **Exhibit F**, at ¶ 27; **Exhibit G**, at ¶ 27; *see also* **Exhibit H**, at ¶ 27; **Exhibit I**, at ¶ 27.  Moreover, each of the Plaintiffs worked for Defendants for duration of approximately a year or more. For these reasons as well, it cannot be disputed that Plaintiffs were employees of Defendants and not independent contractors.

"[T]he Court [also] considers the extent to which Plaintiffs' services were an integral part of Defendants' business." *Rezendez*, 2015 WL 3484835 at *13. Here, Defendants admit that the work performed by Plaintiffs was integral to Defendants' business. *See* **Exhibit F**, at ¶ 29; **Exhibit G**, at ¶ 29. Thus, this factor gravitates in favor of a finding that Plaintiffs were Defendants' employees.

In sum, the undisputed facts render it manifestly clear that Plaintiffs were employees and not independent contractors. Thus, the Court is bound to hold—as a matter of law—that Plaintiffs were employees, subject to the coverage of the FLSA—and not independent contractors.

### D. <u>The Motor Carrier Act Exemption to the FLSA Does Not Apply to This Case</u>.

Discovery is now complete and Defendants have failed to adduce any facts which would permit the Court to find that Defendants have met their heavy burden to establish that Plaintiffs were exempt from the FLSA's overtime provisions. Thus, Plaintiffs are also entitled to summary judgment holding that the motor carrier act exemption is inapplicable to their employment with Defendants.

Exemptions from the overtime provisions of the FLSA "are to be narrowly construed against the employer." *Birdwell v. City of Gasden, Ala*., 970 F.2d 802, 805 (11th Cir. 1992). "The Act should be interpreted liberally in the employees favor." *Id.* "The defendant must prove applicability of an exemption by 'clear and affirmative evidence.'" *Id.* (quoting *Donovan v. United Video, Inc*., 725 F.2d 577, 581 (10th Cir. 1984).

"The Motor Carrier Act Exemption is found in Section 213(b)(1) of the FLSA and provides that the FLSA's overtime provision does not apply to any employee with respect

to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." *Huete v. Arguello Delivery & Cargo Corp.*, No. 15-23806-CIV, 2016 WL 4077098, at *2 (S.D. Fla. July 29, 2016). The Eleventh Circuit has explained:

> The Secretary has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

*Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 181-82 (11th Cir. 1991) (citing 29 C.F.R. § 782.2(a)).  "An employer is subject to the Secretary's jurisdiction if it 'show[s] that it (a) is a motor carrier and (b) transports passengers or property in interstate commerce.'" *Huete*, 2016 WL 4077098, at *2 (citing *Rojas v. Garda CL Se., Inc.*, No. 13-23173-CIV, 2015 WL 5084135, at *3 (S.D. Fla. Aug. 28, 2015)). Additionally, "motor carrier" under the Motor Carrier Act is a "person who provides commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The employer bears the burden of showing the applicability of an exemption. *Rojas,* 2015 WL 5084135, at *3 (S.D. Fla. Aug. 28, 2015).

The undisputed facts in this case indicate that the Motor Carrier Act Exemption to the FLSA does not apply in this case.  First, Defendants admit that Plaintiffs never drove outside of the State of Florida in the performance of their job duties.  *See* supra ¶¶ 24, 27. Moreover, Defendants admit that Plaintiffs were solely responsible for local deliveries within the State of Florida, for items that they picked up within the state of Florida.  *See* **Exhibit F**, at ¶ 32; **Exhibit G**, at ¶ 32; *see also* **Exhibit H**, at ¶ 32; **Exhibit I**, at ¶ 32.

21

Defendants additionally acknowledge that there was no reasonable expectation that Plaintiffs would be required to drive outside of the state of Florida in the performance of his job duties.  *See* Exhibits A and B at ¶ 19.  Furthermore, Defendants have the burden to prove that the exemption applies to Plaintiffs and Defendants have not produced any evidence to date that would lead this Court to believe that the exemption applies.  On the contrary, the undisputed facts in the record indicate that the exception does not apply.  Inasmuch as Defendants bear the burden of proof regarding their exemption defense and they have adduced no evidence in support of same, Plaintiffs are entitled to summary judgment on this issue as well.

## E.  Defendants Manifest a Lack of Good Faith.

The FLSA provides that "[a]ny employer who violates… [29 U.S.C. §207] ***shall*** be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, ***and an additional amount as liquidated damages.*** 29 U.S.C. §216(b). (emphasis added).  An employer seeking to avoid award of liquidated damages under the FLSA bears burden of proving both good faith and reasonableness, but burden is a difficult one, with double damages being the norm and single damages the exception. *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987); *see also Allen v. Board of Public Educ. For Bibb County,* 495 F3d. 1306 (11th Cir. 2007).

***If*** an affirmative defense of good faith is pled, an employer may avoid liquidated damages only by demonstrating that it acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA.  *Dybach v. Fla. Dep't of Corr.,* 492 F.2d 1562, 1566 (11th Cir.1991).  This determination has both a subjective and

objective component. *Id.* The subjective component refers to the employer's actual belief. *See id.* On the other hand, the objective component measures the reasonableness of the employer's belief and appears to "require[] some duty to investigate potential liability under the FLSA." *Barcellona v. Tifany English Pub, Inc*. 597 F.2d 464, 469 (5th Cir. 1979).[2] (Restaurant, which never attempted to meet its burden of showing that its failure to pay minimum wage was both in good faith and predicted upon reasonable grounds, except for its contention that its owners were merely a couple of farmers, acting for the first time as employers, with blind faith in their franchisor, was liable for liquidated damages in connection with its failure to satisfy its obligation to pay its waiters the minimum wage.) "The Act assigns the judge the role of finding whether the employer acted in subjective and objective good faith of liquidated damages purposes." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir.2008)(citing 29 U.S.C. § 260). To establish requisite subjective "good faith" to avoid award of liquidated damages upon finding of actual damages under the FLSA's overtime provision, employer must show that it took active steps to ascertain dictates of FLSA and then to comply with them. *Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132 (2d. Cir. 2008).

Here, Defendants have failed to assert an affirmative defense of good faith because the Defendants never filed an Answer with this Court or in arbitration. Furthermore, Defendants admit that during one or more work weeks during Plaintiff's employment with Defendants, Plaintiffs worked in excess of forty hours in a work week. *See* Exhibits A & B at ¶ 1. Defendants likewise admit that for those weeks that Plaintiffs

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1209 (11th Cir.1981) (en banc), the 11th Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

worked in excess of forty hours for Defendants, Plaintiffs were not paid time and one half of their regular rate of pay for the hours worked by them in excess of forty.  *See* Exhibits A & B at ¶ 2.  Moreover, Defendants admit that they did not take any affirmative steps to ensure that their policy complied with the FLSA.  *See* Exhibits A & B at ¶¶ 10-11. Defendants have failed plead or to present any evidence of good faith whatsoever, and thus any FLSA violations are necessarily "willful."

Consequently, Plaintiff is entitled to liquidated damages in an amount equal to his damages for unpaid minimum wages and overtime.  *See Bozeman v. Port-O-Tech Corp.*, 2008 WL 4371313 (S.D. Fla. 2008)(awarding liquidated damages in full where Defendant failed to plead good faith as an affirmative defense and failed to meet its burden of proof with regard to same).

### F.  Conclusion

Based on the undisputed record evidence in the instant case, Plaintiff is entitled to an award of summary judgment finding: (1) Defendants are an enterprise within the meaning of the Fair Labor Standards Act ("FLSA"); (2) Each of the Defendants (jointly) employed Plaintiff within the meaning of the FLSA; (3) Based on the economic reality of their employment, Plaintiffs were employees of Defendants as opposed to independent contractors; (4) The Motor Carrier Act Exemption under the FLSA does not apply; and (5) Defendants failure to pay Plaintiff overtime wages was willful, and not in good faith, such that Plaintiff is entitled to liquidated damages.

Dated:  December 1, 2017

Respectfully submitted,

**s/ ANDREW FRISCH**
Andrew Frisch
FL Bar No.:  27777
MORGAN & MORGAN, P.A.
6824 Griffin Road
Davie, Fl. 33314
Tel: 954-318-0268
Fax: 954-333-3515
E-mail: afrisch@forthepeople.com

**Trial Counsel for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed

using the CM/ECF system, which I understand will send an electronic notice of same to

all parties of record, this <u>5th</u> day of November, 2010.


**<u>s/ ANDREW FRISCH</u>**
Andrew Frisch