# EXHIBIT C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS MALDONADO, on behalf of
himself and those similarly situated,            CASE NO.: 8:13-cv-00292-VMC-AEP

    Plaintiff,

v.

CALLAHAN'S EXPRESS DELIVERY, INC.,
a Florida Profit Corporation, and
PATRICK W. CALLAHAN, individually,

    Defendants,
_____/

## DECLARATION BY LUIS MALDONADO

I, LUIS MALDONADO, declare under penalty of perjury and pursuant to 28 U.S.C. §1746 as follows:

1.     My name is Luis Maldonado.

2.     I am the Plaintiff in this action.

3.     I make this Declaration based upon personal knowledge.

4.     I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

5.     From June 2011, through June 2012, I was employed by Defendants, CALLAHAN'S EXPRESS DELIVERY, INC. ("Callahan's"), and PATRICK W. CALLAHAN ("Callahan") (collectively "Defendants").

6.     Initially, I was employed as a driver's helper, and later in my employment I was employed as a driver. Throughout my employment, I was paid solely piece rates of $10.00 per delivery.

7.     Specifically, after a short telephone interview with Defendant, Patrick W. Callahan, he hired me and told me where and when I should report for work the following day. Specifically, he told me to report to the Mattress Firm's Warehouse in Orlando, Florida and to be there at 7:00am the following morning.

8.     During my employment with Callahan, I delivered solely for Defendants, although Callahan assigned me to work at two of Defendants' accounts Mattress Firm's Warehouse and IKEA on different days. Typically, Callahan assigned me to deliver for Mattress Firm's Warehouse, but on occasions he would assign me to perform deliveries for IKEA. Regardless, Defendants dictated where and to whom I was to report for work each day.

9.     I never drove out of state for Defendants. Instead, my work consisted of making local deliveries each day, as assigned to me by Defendants and/or Defendants' clients.

10.    Regardless of whether I was assigned to work at Mattress Firm's Warehouse or IKEA on a given day, Defendants and/or their clients gave me a pre-set schedule of my deliveries for the day, and gave me a specific window of time within which each delivery had to be made.

11.    I had no say in my schedule each day, and could not choose where to work, when to work, the hours of my work, or the number or location of my deliveries each day.

12.    Callahan determined both the method of my pay (piece rates) and the amount ($10/delivery).

13.    I did not manage any aspect of my work. Rather, each day I made the deliveries I was assigned, during specific windows of time, and was paid the $10.00 per delivery that Callahan set as my pay on a weekly basis.

14. Throughout my employment, I was required to arrive at work at 7:00am each day, and work until all of my assigned deliveries were complete. I worked this schedule between 6 and 7 days per week throughout my employment.

15. Typically, I worked 12 hours or more per day, or between 60 and 84 hours per week.

16. To the extent I had to miss a day of work for any reason, I was required to notify Defendants or their client(s) ahead of time. I understood that if I failed to call out and simply failed to show up for work, I could and would be terminated. In fact, during my employment Defendants terminated multiple drivers when they failed to appear for work more than once without calling out.

17. Likewise, if there was any issue with the truck that Callahan assigned me to drive, I was required to contact Callahan to resolve any such issue.

18. Although he was not there every morning, Callahan was at the warehouse on the majority of mornings to resolve any issues with the trucks that I or any of his employees had with regard to the trucks he assigned us to drive that day.

19. Defendants and their clients controlled all aspects of my work.

20. Neither I nor any of the other drivers made any investment of significance in our work. Rather, Defendants provided the trucks we were required to drive, paid for our gas, and covered the insurance on the trucks.

21. The only thing I was required to bring were basic hand tools which I already owned and my personal cell phone.

22. Whereas, Defendants incurred tens of thousands of dollars in business costs each month related to the delivery trucks, my "investment" was limited to less than $100 per month, or the cost of my monthly cell phone bill.

3

23. Although I regularly worked over 40 hours per week, Defendants failed to pay me any overtime premiums in addition to my piece rates.

24. Throughout my employment with Defendants, Defendants intentionally misclassified me as an independent contractor, in order to avoid paying the required payroll taxes, social security contributions, and workers compensation insurance premiums required by Federal and/or Florida laws.

25. If called to testify at trial in this action, I will testify in accordance with this declaration. Executed this 29 day of November, 2017, in 2017 County, Puerto Rico.

I, Luis A. Maldonado declare under penalty of perjury that the foregoing is true and correct.

_____
SIGNATURE