# EXHIBIT F

AMERICAN ARBITRATION ASSOCIATION
AAA File No. 33 523 00375 13

In the Matter of the Arbitration
between:

LUIS MALDONADO, on behalf of himself and
those similarly situated,

        CLAIMANT,
and

CALLAHAN'S EXPRESS DELIVERY, INC., and
PATRICK CALLAHAN, individually,

        RESPONDENTS.

## CLAIMANT, LUIS MALDONADO
## SECOND REQUEST FOR ADMISSIONS TO RESPONDENT

Claimant, **LUIS MALDONADO,** on behalf of himself and all Claimants, pursuant to Rule 36 of the Federal Rules of Civil Procedure, hereby requests that Respondent, **PATRICK CALLAHAN**, admit or deny each of the statements set forth below, within 30 days and as required by the Rules:

Dated: February 16, 2016.

                                            Andrew Frisch, Esq.
                                            Fla. Bar No. 027777
                                            Morgan & Morgan, P.A.
                                            600 N. Pine Island Rd.
                                            Suite 400
                                            Plantation, FL 33324
                                            Telephone:   (954) 318-0268
                                            Facsimile:    (954) 327-3013
                                            Email: afrisch@forthepeople.com
                                            *Counsel for Claimant*

1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 16, 2016, I sent a true and correct copy of the foregoing, via Electronic Mail to jshoemaker@boginmunns.com and Jonathanweed@adr.org, and via U.S. Mail to Joe Shoemaker, Esq., Bogin Munns & Munns, P.A., 628 S 14th Street, Leesburg, FL 34748.

_____
Andrew Frisch, Esq.

2

## DEFINITIONS

For Purposes of this Request for Admissions:

i.  "Claimant" refers to **LUIS MALDONADO.**

ii. "Claimants" refers collectively to **LUIS MALDONADO,** and all of the other Claimants who have filed a consent to join this arbitration entitled *Maldonado v. Callahan's Express Delivery, Inc.*, Case No. 33 523 00375 13.

iii. "Respondent" and "you" and "your" refers to the Respondent, **PATRICK CALLAHAN.**

iv. "Person" means any person or entity, and includes individuals, corporations, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

v. "Documents" shall mean the original or exact copies of any tangible written, typed or other form of recorded or graphic matter of every kind or description, however produced or reproduced, whether mechanically or electronically recorded, draft, finals, original, reproduction, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, and whether handwritten, typed, printed, Photostatted, duplicated, carbon or otherwise copies or produced in any other manner whatsoever. Without limiting the generality of the foregoing, "documents" shall include correspondence, letters, telegrams, telexes, mail-grams, memoranda, including interoffice and intra-office memoranda, memoranda for files, memoranda of telephone or other conversations, and including meetings, invoices, reports, receipts and statements of account, ledgers, notes or notations, booklets, books, drawings, graphs, telephone records, video cassettes, electronic tapes, discs or other recordings, computer programs, printouts, data cards, studies, analysis and other data compilations from which information can be obtained. Copies of documents which are not identical duplications of the originals or which

contain additions to or deletions from the originals, or copies of documents which are identical duplications of the originals if the originals are not available, shall be considered to be separate documents.

vi. "Communication" means any oral or written statement, dialogue, colloquy, discussions, or conversation, and also means any transfer of thoughts or ideas between person by means of documents and includes any transfer of data from one location to another by electronic or similar means.

vii. If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

viii. "Related to" shall mean directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

ix. The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any responses to interrogatories, documents, or communications, which might otherwise be construed to be outside the scope hereof.

x. "Produced" when used in reference to products, materials, supplies or goods refers to the manufacture, distribution of sale of the same as contemplated by the definitions contained in the Fair Labor Standards Act and its related regulations.

xi. "Employment" or "work" are to be construed as consistent with the definitions contained in the Fair Labor Standards Action and its related regulations.

4

## INSTRUCTIONS

1. You must serve a written answer or objection to each Request within thirty (30) days after service of the request or else the matter is admitted.

2. You must state the reasons for any objection. In the event you decline to respond to any Request on the basis of a claim of privilege, please state the privilege relied upon and the facts supporting such claim of privilege.

3. You must specifically deny the matter or set forth in detail the reasons why you cannot truthfully admit or deny the matter.

4. Any denial you make must fairly meet the substance of the Request, and when good faith requires you to qualify your answer or deny only a part of the matter for which an admission is requested, you shall specify so much of it as is true and qualify or deny the remainder.

5. In the event a lack of information or knowledge is the reason for your failure to admit or deny, you must state that you made a reasonable inquiry and that the information known or readily attainable by you is insufficient to enable you to admit or deny.

6. You must pay any expenses, <u>including legal fees</u>, under the Federal Rules of Civil Procedure, incurred by the Claimant(s) to prove a matter which you improperly fail to admit.

## REQUEST FOR ADMISSIONS

1. Admit that Respondent controlled Claimants' daily work schedules.

RESPONSE:

2. Admit that Respondent assigned Claimants their daily work schedules.

RESPONSE:

3. Admit that Respondent controlled the time that Claimants were required to report to work each day.

RESPONSE:

4. Admit that Respondent assigned Claimants their weekly work schedules.

RESPONSE:

5. Admit that Respondent assigned the type of work to be performed to all of the Claimants on a daily basis.

RESPONSE:

6. Admit that Respondent dictated whether or not Claimants could take time off from work.

RESPONSE:

7. Admit that Claimants were subject to termination if they failed to report for work without being excused by Respondent.

RESPONSE:

8. Admit that Claimants were required to call Respondent if they were unable to work on one or more workdays.

RESPONSE:

9. Admit that Respondent controlled the manner in which Claimants carried out their work.

RESPONSE:

10. Admit that Claimants were required to carry out the work orders given to them by Claimants in the order in which Respondent required.

RESPONSE:

11. Admit that Respondent did not permit Claimants to perform work for any other trucking company while they were employed by Respondent.

RESPONSE:

12. Admit that Respondent did not permit Claimants to perform any work for Respondent's clients, other than the work that Respondent assigned to Claimants.

RESPONSE:

13. Admit that each work order Claimants completed had a time window within which the work order had to be completed.

RESPONSE:

14. Admit that Claimants had no control over the assignments that they received from Respondent and Respondent's client/customers.

RESPONSE:

15. Admit that Respondent penalized drivers who frequently requested time off.

RESPONSE:

16. Admit that Respondent threatened to penalize drivers who frequently requested time off.

RESPONSE:

7

17. Admit that Respondent terminated drivers who failed to show up for work without advising Respondent of the reason.

RESPONSE:

18. Admit that Respondent provided Claimants with specifications on how their work was to be performed.

RESPONSE:

19. Admit that Respondent subjected Claimants to chargebacks if Respondent to the extent that Claimants failed to perform their work within the specifications outlined by Respondent.

RESPONSE:

20. Admit that Claimants' opportunity for profit or loss did not depend upon their managerial skill.

RESPONSE:

21. Admit that Claimants' compensation was based on the number and type of jobs they completed for Respondent and its customers/clients.

RESPONSE:

22. Admit that none of the Claimants employed other people while they were working for Respondent.

RESPONSE:

23. Admit that none of the Claimants made any significant investment in equipment necessary to perform their work for Respondent.

RESPONSE:

24. Admit that Respondent owned all of the trucks used by Claimants for their work.

RESPONSE:

25.   Admit that no special skills were required for Claimants to perform their work for Respondent.

RESPONSE:

26.   Admit that any skills required for Claimants to perform their work for Respondent could/were learned on-the-job or through experience.

RESPONSE:

27.   Admit that Claimants' work was of an indefinite nature in that there was no specific stop date, until such time that each of the Claimants separated their employment.

RESPONSE:

28.   Admit that Claimants were expected to complete enough work orders that they worked eight or more hours every day.

RESPONSE:

29.   Admit that the work performed by Claimants was integral to Respondent's business.

RESPONSE:

30.   Admit that Claimants never drove outside the State of Florida while working for Respondent.

RESPONSE:

31.   Admit that the Department of Transportation lacked jurisdiction over Claimants at any time during their employment with Respondent.

RESPONSE:

32.   Admit that Claimants were solely responsible for local deliveries within the State of Florida, for items that they picked up within the State of Florida.

9

RESPONSE:

Admit that none of the items that Claimant delivered on behalf of Respondent and its clients had a pre-determined final destination at the time that they entered the State of Florida.

RESPONSE: