UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS MALDONADO, on behalf of
himself and those similarly
situated,

       Plaintiffs,

v.                          Case No. 8:13-cv-292-T-33AEP

CALLAHAN'S EXPRESS DELIVERY,
INC. and PATRICK CALLAHAN,

       Defendants.

_____/

**ORDER**

This matter is before the Court pursuant to the Motion for Summary Judgment (Doc. # 98), which was filed by Luis Maldonado, "on behalf of himself and those similarly situated," on December 1, 2017. Defendants Patrick Callahan and Callahan's Express Delivery, Inc. filed a Response in Opposition (Doc. # 99) on December 15, 2017. For the reasons that follow, the Court grants the Motion in part and denies the Motion in part.

**I.   Background**

Callahan's Express Delivery and Callahan contract to make local delivery of mattresses, furniture, and other goods on behalf of retail customers, such as Mattress Firm and IKEA. (Doc. # 98 at 2). Callahan is "the proprietor of Callahan's Express Delivery, Inc." (Callahan Aff. Doc. # 99-1 at ¶ 2). Maldonado was employed by Defendants from June of 2011 through

June of 2012. (Maldonado Decl. Doc. # 98-3 at ¶ 5).  Maldonado began his employment as a driver's helper and then became a driver. (Id. at ¶ 6).  Throughout his employment, Maldonado states that he was paid a "piece rate" of $10.00 per delivery. (Id.).  Callahan, on the other hand, asserts that drivers were paid $20.00 for each completed delivery. (Callahan Aff. Doc. # 99-1 at ¶ 18). Maldonado signed an "Independent Contractor's Agreement" that states, among other things, "The parties' intention is that Contractor be an independent contractor and not the employee of the Company and that Contractor retains sole and absolute discretion in the manner and means [of] carrying out the services described in [the Agreement]." (Doc. # 99-1 at 5). The services described in the Agreement are "driver on a truck, delivering for the Company, and requiring a two man team." (Id. at ¶ 1).  Although the Agreement is dated November 13, 2010, Maldonado states in his declaration that his employment began in June of 2011. (Maldonado Decl. Doc. # 98-3 at ¶ 5).

Maldonado claims Callahan told him where and when Maldonado should report for work. (Id. at ¶ 7).  "Defendants and/or their clients gave [Maldonado] a pre-set schedule of . . . deliveries for the day, and gave [Maldonado] a specific window of time within which each delivery had to be made." (Id. at ¶ 10).  Maldonado indicates he "had no say" with

respect to his schedule and he "could not choose where to work, when to work, the hours of the work, or the number or location of [the] deliveries each day." (Id. at ¶ 11).   In stark contrast, Callahan states that drivers, such as Maldonado, "were not required to work any specific days, times, hours or shifts" and "could choose to work, or not to work, on a given day depending upon their availability." (Callahan Aff. Doc. # 99-1 at ¶¶ 14, 17).  All deliveries took place within the state of Florida. (Maldonado Decl. Doc. # 98-3 at ¶ 9).

According to Maldonado, he typically worked 12 or more hours per day between 6 and 7 days a week.  (Id. at ¶¶ 14-15). Although he routinely worked between 60 and 84 hours per week, he was not paid overtime compensation. (Id. at ¶¶ 15, 23).  He states that he was required to notify Defendants if he had to miss a day of work for any reason and faced termination if he missed scheduled work days. (Id. at ¶ 16).  But Callahan avers that drivers "were not specifically required to notify [Callahan] if they were unable to work." (Callahan Aff. Doc. # 99-1 at ¶¶ 20-21). And if a driver failed to show up for a scheduled delivery, "they may not have been utilized for future services, but were not terminated by [Callahan]." (Id.)

The parties agree that Maldonado supplied some of his own tools such as "basic hand tools" and his personal cell phone.

3

(Maldonado Decl. Doc. # 98-3 at ¶¶ 20-21).  Callahan confirms that  Maldonado supplied "necessary tools to perform the job" such as "screwdrivers, cordless drill, smart phone, drill bits, and pliers." (Callahan Aff. Doc. # 99-1 at ¶ 12). Defendants, on the other hand, supplied 10,000 pound trucks, fuel, and insurance. (Maldonado Decl. Doc. # 98-3 at ¶ 20).

## II.  Procedural History

On January 31, 2013, Maldonado initiated this action by filing a single-count complaint for violations of the Fair Labor Standards Act against Mattress Firm, Inc., Callahan's Express Delivery, Inc., and Patrick Callahan. (Doc. # 1). Mattress Firm filed an Answer on March 12, 2013. (Doc. # 20). The Callahan Defendants filed a Motion to Compel Arbitration (Doc. # 23) on March 20, 2013.  On April 24, 2013, the Court granted the Callahan Defendants' Motion to Compel Arbitration and directed the parties to advise the Court regarding whether Maldonado's claims against Mattress Firm should be stayed pending resolution of the arbitration proceedings. (Doc. # 34).  On April 25, 2013, Mattress Firm filed a separate Motion requesting that the claims against it also be submitted to arbitration. (Doc. # 37).  On June 3, 2013, the Court granted the Motion "to the extent that the Court compels arbitration of Maldonado's claim against Mattress Firm." (Doc. # 50 at 19).  Because all of Maldonado's claims were ordered to be

4

submitted to arbitration, the Court closed the case on June 3, 2013. (Id.).

Yet, on January 12, 2017, Maldonado filed a Motion to Reopen the Case. (Doc. # 51). Maldonado explained that he filed a Demand for Arbitration with the American Arbitration Association in order to commence arbitration proceedings against the Callahan Defendants, but the Callahan Defendants "repeatedly and willfully refused to comply with the AAA's requirements for maintaining a case in arbitration." (Id. at 2). Maldonado stated he paid all fees due to the AAA in a timely manner, but the Callahan Defendants – the parties that made the demand for arbitration - failed to timely pay the arbitrator, failed to respond to discovery orders entered in the arbitration, and unduly delayed the arbitration process. (Id. at 2-3). Maldonado submitted to this Court an Order issued by the AAA on July 27, 2016, reflecting that the arbitration was administratively closed. (Doc. # 51-1). On January 30, 2017, the Court entered an Order denying without prejudice the Motion to Reopen the Case and requesting more information regarding the failed arbitration. (Doc. # 52).

On April 18, 2017, Maldonado renewed his Motion to Reopen the Case. (Doc. # 53). The Court entered an Order on May 3, 2017, reopening the case with respect to the Callahan Defendants but denying the Motion as to Mattress Firm. (Doc.

# 59). The Court explained that Maldonado was required to proceed against Mattress Firm through arbitration and "the record reflects that no such proceeding was instituted by Maldonado against Mattress Firm in the almost four years since the Court compelled arbitration." (Id. at 4).

With the case reopened as to the Callahan Defendants only, the Court entered a Fast Track Scheduling Order on May 4, 2017. (Doc. # 60). Thereafter, on June 2, 2017, Maldonado filed a Notice reflecting that six individuals (Johnny Machado, Ed-Joacin Melendez, Javier Aguilar, Alex Armon, Artis Patterson, and Mario Calo) executed Consent to Join Collective Action forms. (Doc. # 63). Machado filed a declaration containing statements similar to those made by Maldonado. (Machado Decl. Doc. # 98-4). Callahan states Maldonado, Machado, and Patterson were "independent contractor drivers" and Armon, Melendez, and Aguilar were "driver's helpers who were neither employees nor independent contractors." (Callahan Aff. Doc. # 99-1 at ¶¶ 5-6). Callahan explains that drivers had the prerogative to hire helpers, and if they did, the individual drivers, not Defendants, would pay the helpers. (Id. at ¶ 8). None of the helpers filed declarations or affidavits and the parties have not demarcated the difference between a driver and a helper. Neither Callahan nor Callahan's Express Delivery filed an Answer to the Complaint

and they have not presented any affirmative defenses. The
deadline for Defendants to do so has long expired. In
addition, Maldonado has not moved for conditional
certification of an opt-in class and issuance of notice under
29 U.S.C. § 216(b).

On June 26, 2017, the parties participated in a mediation
conference but reached an impasse. (Doc. # 70). On November
8, 2017, the Court issued a Case Management and Scheduling
Order setting a pretrial conference for February 5, 2018, and
a jury trial for the February 2018 trial term. (Doc. # 97).
On December 1, 2017, Maldonado filed a Motion for Summary
Judgment. (Doc. # 98). The Motion is ripe for the Court's
review. (Doc. # 99). As explained below, the Court grants the
Motion in part and denies the Motion in part.

### III. <u>**Legal Standard**</u>

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). A factual dispute alone is not enough to
defeat a properly pled motion for summary judgment; only the
existence of a genuine issue of material fact will preclude a
grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc. 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference

8

from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988). (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## IV.   Analysis

### A.   FLSA Enterprise Coverage

Maldonado seeks summary judgment on the issue of whether the Callahan Defendants are covered by the FLSA.  The FLSA provides coverage where an enterprise (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (2) "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).  "It has been firmly established that the phrase 'engaged in commerce' within the meaning of the FLSA is to be given a broad, liberal construction." <u>DeMaria v. Ryan P. Relocator Co.</u>, 512 F. Supp.

9

2d 1249, 1257 (S.D. Fla. 2007)(citing Brennan v. Wilson Bldg.,
Inc., 478 F.2d 1090, 1093 (5th Cir. 1973)).

Maldonado served the Callahan Defendants with discovery
aimed at ascertaining FLSA coverage. (Doc. ## 98-1, 98-2).
Among other requests, Maldonado requested that Defendants
"[a]dmit that Respondent grossed more than $500,000 in gross
receipts or business done" in 2009-2011. (Doc. # 98-1 at 8-9).
He also requested that Defendants "[a]dmit that in the
performance of his work, Claimant regularly handled goods and
materials that originated outside the State of Florida." (Id.
at 9).

The Callahan Defendants did not respond to the discovery
requests. Maldonado filed a Motion requesting sanctions based
on the Callahan Defendants' failure to respond to discovery.
(Doc. # 85). In an Order dated November 7, 2017, the Court
granted the Motion for Sanctions and held that Maldonado's
requests for admissions are deemed admitted. (Doc. # 96).
Through the Requests for Admissions, which have been deemed
admitted, Maldonado has established that the Callahan
Defendants are covered by the FLSA. And, tellingly, in
response to the Motion for Summary Judgment, Defendants did
not raise any arguments aimed at defeating enterprise coverage
under the FLSA. Thus, the Motion for Summary Judgment is
granted to the extent that the Court finds that Callahan

Defendants are an enterprise subject to the coverage of the FLSA.

### B.   <u>Employee vs. Independent Contractor Status</u>

The FLSA's overtime provisions apply to employees, but not independent contractors. <u>Perdomo v. Ask 4 Realty & Mgmt, Inc.</u>, 298 F. App'x 820, 821 (11th Cir. 2008). "A determination of employment status under the FLSA . . . is a question of law." <u>Id.</u>   In determining whether an individual is an employee, instead of an independent contractor, courts apply the "economic realities" test.   <u>Scantland v. Jeffry Knight, Inc.</u>, 721 F.3d 1308, 1311-12 (11th Cir. 2013).   This test requires the Court to "look past the labels the parties apply to their relationship, and to examine both whether Plaintiff's relationship to Defendant is that of a traditional employee and to what extent Plaintiff is economically dependent upon Defendants." <u>Castro v. Sevilla Props., LLC</u>, No. 13-cv-22466, 2013 U.S. Dist. LEXIS 181210, at *6 (S.D. Fla. Dec. 30, 2013).

In the Eleventh Circuit, courts consider the following factors in determining an individual's employment status:

 (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
 (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
 (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
 (4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the
working relationship; and

(6) the extent to which the service rendered is an
integral part of the alleged employer's
business.

Scantland, 721 F.3d at 1312.  No one factor is outcome
determinative, nor is the list exhaustive. Id. "Ultimately, in
considering economic dependence, the court focuses on whether
an individual is 'in business for himself' or is 'dependent
upon finding employment in the business of others.'" Id.
(citing Mednick v. Albert Enters., Inc., 508 F.2d 297, 301-02
(5th Cir. 1975)).

The Court recognizes that the determination of whether an
individual is an employee or an independent contractor is a
legal issue.  Nevertheless, genuine issues of material fact
preclude a ruling on this threshold issue.

1. **Nature and Degree of Control**

"The economic reality inquiry requires [the Court] to
examine the nature and degree of the alleged employer's
control, not why the alleged employer exercised such control."
Scantland, 721 F.3d at 1316.  The Eleventh Circuit has found
the following factors, among others, relevant to the control
inquiry: "whether the alleged employer (1) had the power to
hire and fire the employee, (2) supervised and controlled
employee work schedules and conditions of employment, (3)
determined the rate and method of payment, and (4) maintained

12

employment records." <u>Villarreal v. Woodham</u>, 113 F.3d 202, 205 (11th Cir. 1997).

It is undisputed that Callahan hired the drivers, but it appears the individual drivers had the authority to hire the driver's helpers. Maldonado seeks overtime payments for his time as both a driver and as a helper. It is not clear whether the helpers were paid or otherwise employed by Defendants at all. And, while Maldonado claims that Callahan had the power to discipline and terminate drivers and helpers, Callahan characterizes his role differently. Callahan also claims the drivers "had no requirements to work any specific number of hours and could work as their availability and the availability of [Callahan's Express Delivery's] clients dictated." (Callahan Aff. Doc. # 99-1 at ¶ 19). Maldonado recounts the situation differently by asserting that Callahan controlled every aspect of the delivery schedule. There is also a dispute regarding the amount paid for deliveries. In <u>Solis v. A+ Nursetemps, Inc.</u>, No. 5:07-cv-182, 2013 U.S. Dist. LEXIS 49595 at *18 (M.D. Fla. Apr. 5, 2013), the court observed that "[i]n an independent contractor relationship, the independent contractor normally has at least an equal say in the rate to be charged for particular work by bidding on the job or by posting or advertising standard rates for the work to be performed." Here, it is not clear whether any

driver or driver's helper had any say in the amount he was paid. The issue of employer control is clouded by various disputes of fact, which preclude summary judgment.

### 2. Opportunity for Profit or Loss

Courts may find independent contractor status when a worker is able to garner additional income or profit through the exercise of managerial skill or increased efficiency in the manner or means of accomplishing the work. See Scantland, 721 F.3d at 1316-17. "The opportunity for profit and loss has more to do with relative investments, with control over larger aspects of the business, and with like forms of initiative." Harrell v. Diamond A Entm't, 992 F. Supp. 1343, 1351 (M.D. Fla. Nov. 28, 1997).

The Callahan Defendants argue that Maldonado had the opportunity to control the number of deliveries he made, the hours he worked, as well as the choice of whether to hire a helper. But, Maldonado claims he was completely powerless: "I did not manage any aspect of my work. Rather, each day I made the deliveries I was assigned, during specific windows of time, and was paid the $10.00 per delivery that Callahan set as my pay." (Maldonado Decl. Doc. # 98-3 at ¶ 13). The parties' differing accounts of the relevant facts present a genuine dispute and a credibility determination is needed.

14

### 3.   <u>Relative Investments of the Parties</u>

Courts may find independent contractor status when a worker invests in equipment or materials required for completing his tasks, or hires other workers to assist him in the completion of his tasks. <u>Scantland</u>, 721 F.3d at 1317. Here, Maldonado did make such investments. It is not disputed that Maldonado supplied hand tools such as drills, screwdrivers, pliers, and a smart phone.

However, when the Court compares the relative investments of the parties, it appears that this factor weighs in favor of finding employee status. See <u>Sakacsi v. Quicksilver Delivery Sys.</u>, No. 8:06-cv-1297-T-24MAP, 2007 U.S. Dist. LEXIS 88747, at *19 (M.D. Fla. Nov. 28, 2007)(FLSA plaintiff delivery drivers that supplied their own vehicles, gas, maintenance, and insurance were still found to be employees because the defendant provided costly iPAQ devices for scanning supplies as well as software, an office building and office supplies); <u>Partridge v. Mosley Motel of St. Petersburg, Inc.</u>, No. 8:15-cv-936-T-33JSS, 2016 U.S. Dist. LEXIS 1723, at *16 (M.D. Fla. Jan. 6, 2016)(FLSA plaintiff's provision of his own drill did not render him an independent contractor because defendant supplied the majority of the tools and supplies needed to carry out the work).

15

4.  **Special Skill Required to Perform the Job**

"A lack of specialization indicates that an individual is an employee, not an independent contractor." Molina v. S. Fla. Express Bankserv, Inc., 420 F. Supp. 2d 1276, 1286 (M.D. Fla. 2006). Further, "[r]outine work which requires industry and efficiency is not indicative of independence and nonemployee status." Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1314 (5th Cir. 1976). "Finally, even if an individual has specialized skills, that is not indicative of independent contractor status where the individual does not use those skills in an independent fashion." Molina, 420 F. Supp. 2d at 1286.

Maldonado generally argues that he provided unskilled labor. Indeed, in Artola v. MRC Express, Inc., No. 14-cv-23219, 2015 U.S. Dist. LEXIS 130183, at *26 (S.D. Fla. Sept. 25, 2015), the court held: "Driving is not a special skill. Neither is manual labor (loading and unloading vehicles)." See also Herman v. Express Sixty-Minutes Delivery Serv, 161 F.3d 299, 305 (5th Cir. 1998)("Express's drivers clearly depend for their livelihood on Express.  They are not specialists called in to solve a special problem, but unskilled laborers who perform the essential, everyday chores of Express's operation.").

But, the Court recognizes the Callahan Defendants'

16

arguments that delivery drivers "had to be qualified and skilled in driving delivery trucks" and their duties included "performing Department of Transportation inspections, general vehicle inspections, loading such vehicles, and securing the loads." (Doc. # 99 at 7).  The Court requires more information regarding this factor to make a determination regarding FLSA employment status.   For instance, did Maldonado need a commercial driver's license to act as a driver or helper?  Was he provided any formal training?  Was he required to spend time as helper before becoming a driver?   It may be that drivers are independent contractors and helpers are employees. More information is needed before these determinations can be made.

### 5.  **Permanency and Duration of Relationship**

In <u>Clincy v. Galardi S. Entertainers</u>, 808 F. Supp. 1326, 1348 (N.D. Ga. 2011), the court indicated that a working relationship of less than one year is "transient or itinerant" and signaled independent contractor status.   Maldonado's relationship with Defendants lasted for one year. (Maldonado Decl. Doc. # 98-3 at ¶ 5).  This factor therefore militates slightly in favor of finding employee status.

### 6.  **Integral Services**

Finally, the Court considers the extent to which Maldonado's services were an integral part of the Callahan

17

Defendants' operations.  "Generally, the more integral the work, the more likely the worker is an employee, not an independent contractor." <u>Robles v. RFJD Holding Co.</u>, No. 11-cv-62069, 2013 U.S. Dist. LEXIS 77524, at *23 (S.D. Fla. June 3, 2013)(internal citation omitted).  Under the facts presented, the Court determines that this factor weighs in favor of finding employee status.  Plainly, a delivery company is dependent upon delivery drivers to function and such drivers perform the core functions of the Callahan Defendants' business. <u>See</u> <u>Sakacsi</u>, at *26 ("Simply put, without its delivery drivers, [defendant] could not function.").

### 7. <u>Examining the Record as a Whole</u>

In determining whether an employer-employee relationship existed, "[n]o one factor is determinative;" "each factor should be given weight according to how much light it sheds on the nature of the economic dependence of the putative employee on the employer." <u>Perdomo</u>, 298 F. App'x at 821; <u>see also</u> <u>Usery</u>, 527 F.2d at 1311 ("No one of these considerations can become the final determinant, nor can the collective answers to all of the inquires produce a resolution which submerges consideration of the dominant factor – economic dependence."); <u>Benshoff v. City of Va. Beach</u>, 180 F.3d 136, 141 (4th cir. 1999) ("The employer-employee relationship does not lend itself to rigid per se definitions, but depends upon the

circumstances of the whole activity.").

Here, some of the relevant factors point to employee status, but many of the relevant factors are dominated by factual disputes. And the overarching question of whether the helpers were employed or otherwise contracted by the Callahan Defendants remains to be addressed. The Court therefore denies the Motion for Summary Judgment with respect whether Maldonado was an employee or, rather, an independent contractor.

C. **Individual Liability for Patrick Callahan**

Plaintiff also seeks a finding that Patrick Callahan should be held individually liable for any violations of the FLSA that may be found in this case. "A corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally." Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986). In making an individual liability determination, the Court must "inquire as to whether the officer was involved in the compensation of employees, the hiring and firing of employees, or other matters in relation to an employee." Olivas v. A. Little Havana Check Cash, Inc., 324 F. App'x 839, 845 (11th Cir. 2009). Summary judgment in a plaintiff employee's favor on the issue of individual liability is appropriate when the individual corporate officer "hired [the plaintiff], set [the plaintiff's] rate of pay and schedule,

19

and had the authority to discipline [the plaintiff]," in addition to "exercis[ing] the authority to hire and fire [the company's] employees, determine work schedules, and control [the company's] finances and operations." Id. The Court has determined that there are genuine issues of material fact regarding the manner of control Callahan exercised over Maldonado and accordingly denies the Motion for Summary Judgment on this issue.

### D.   **Motor Carrier Exemption to the FLSA**

Maldonado seeks summary judgment on the issue of whether the Motor Carrier Act exemption to the FLSA applies. Exemptions from the overtime provisions of the FLSA "are to be narrowly construed against the employer." Birdwell v. City of Gasden, Ala., 970 F.2d 802, 805 (11th Cir. 1992). The FLSA "should be interpreted liberally in the employee's favor." Id. And, a defendant "must prove applicability of an exemption by clear and affirmative evidence." Id. (internal citation omitted). The determination of whether FLSA exemptions should apply is a question of law. Walters v. Am. Coach Lines of Miami, Inc., 569 F. Supp. 2d 1270, 1281 (S.D. Fla. 2008).

Here, the Callahan Defendants have not filed an Answer to the Complaint, nor have they asserted any defenses. Therefore, Defendants have not brought the exemption before the Court in a procedurally correct manner. Rather than provide a ruling

on the application of an exemption that is not squarely before the Court, the Court provides the Callahan Defendants with the opportunity to file an Answer and Affirmative Defenses by **January 19, 2018.** The Motion for Summary Judgment is denied without prejudice with respect to the Motor Carrier Act exemption. The Court will evaluate the exemption only if a Defendant raises it and only if the Court finds that Maldonado is an employee under the FLSA. Until Maldonado's employment status is ascertained, a discussion of possible (and yet to be asserted) FLSA exemptions is a hypothetical and premature judicial exercise.

  **E.**   <u>**Good Faith and Other Issues**</u>

  Maldonado seeks an Order finding that Defendants' conduct evinces a manifest lack of good faith and that the he is accordingly entitled to liquidated damages for any FLSA violations. The FLSA provides that any employer who violates the overtime requirements "shall be liable to the employee or employees affected in the amount of their unpaid . . . overtime compensation . . . and an additional amount as liquidated damages." 29 U.S.C. § 216(b). The Eleventh Circuit has instructed that "an employer who seeks to avoid liquidated damages bears the burden of proving that its violation was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a

compensatory verdict." <u>Joiner v. Macon</u>, 814 F.2d 1537, 1539 (11th Cir. 1987).  That is, "liquidated damages are mandatory absent good faith." <u>Id.</u>

Here, the Court determines that it is premature to evaluate whether the Callahan Defendants acted in good faith. The good faith analysis will only be necessary if a violation of the FLSA is found.  And, at this stage, the determination of whether Maldonado was an employees or an independent contractor still needs to be made.  If, after hearing the evidence, the Court determines that the he was an independent contractor, the good faith inquiry will be moot.  The Court accordingly denies the Motion for Summary Judgment on this issue.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff's Motion for Summary Judgment (Doc. # 98) is **GRANTED IN PART AND DENIED IN PART** consistent with the foregoing.

(2)  Defendants shall file an Answer by **January 19, 2018.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>12th</u> day of January, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

22